UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x       Case No. 17-CV-05507 (AKH)
CLAUDINNE FELICIANO,
Individually and on behalf of all others
similarly situated,

               Plaintiff,

        -against-

CORELOGIC SAFERENT, LLC,
a/k/a CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC,

               Defendant.
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

Seth R. Lesser
Alexis H. Castillo
KLAFTER OLSEN & LESSER LLP
Two International Drive Suite 350
Rye Brook, New York 10573

James B. Fishman
FishmanLaw, PC
305 Broadway, Suite 900
New York, New York 10007

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

    A.  CoreLogic's Credit Reporting Practices .................................................. 3

        1.   The Process by Which CoreLogic Obtained NYC Housing Court Records ........ 4

        2.   The Problems CoreLogic Faced In Acquiring NYC Housing Court Data ............ 5

    B.  By Abandoning the OCA Feed, CoreLogic Recklessly Disregarded Reasonable Procedures to Ensure Maximum Accuracy ................................................... 10

    C.  Plaintiff's Experience Reflects CoreLogic's Shoddy Practices ................................. 11

    D.  ███████████████████████████████ ......................... 14

    E.  The Impact of CoreLogic's Practices on Consumers Seeking to Rent Residential Housing ................................................................................................. 16

ARGUMENT ....................................................................................................................... 17

  I.  The Requirements of Rule 23(a) Are Satisfied ................................................. 18

    A.  Members of the Class Are So Numerous That Joinder is Impracticable .................. 18

    B.  There are Questions of Law and Fact Common to Plaintiff and the Class ................ 18

    C.  Ms. Feliciano's Claims are Typical of the Class Claims ........................................... 20

    D.  Ms. Feliciano and Class Counsel Will Fairly and Adequately Protect the Interests of the Class ....................................................................................................... 22

  II.  The Requirements of Rule 23(b)(3) Are Satisfied ........................................... 23

    A.  Questions of Law or Fact Predominate Over All Class Members .............................. 23

    B.  A Class Action is a Superior Means of Adjudicating the Issues in this Case ............ 25

    C.  The Class Is Ascertainable ....................................................................................... 27

CONCLUSION.................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................ 25

*Ansoumana v. Gristedes,*
   201 F.R.D. 81 (S.D.N.Y. 2001) ......................................................................... 17,23

*Ashby v. Farmers Ins. Co.,*
   592 F. Supp. 2d 1307 (D. Or. 2008) ...................................................................... 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   222 F.3d 52 (2d Cir. 2000) ..................................................................................... 22

*Brecher v. Republic of Argentina,*
   806 F.3d 22 (2d Cir. 2015) ..................................................................................... 27

*Carnegie v. Household Int'l., Inc.,*
   376 F.3d 656 (7th Cir. 2004) .................................................................................... 3

*Charron v. Pinnacle Group N.Y. L.L.C.,*
   269 F.R.D. 221 (S.D.N.Y. 2010) ............................................................................ 28

*Clark v. Experian Info. Sols., Inc.,*
   No. 8:00-1217-24, C/A No. 8:00-1218-24, C/A No. 8:00-1219-24,
   2002 U.S. Dist. LEXIS 20410 (D.S.C. June 26, 2002) ......................................... 25

*Clark v. Trans Union, L.L.C.,*
   No. 3:15cv391,
   2017 U.S. Dist. LEXIS 29738 (E.D. Va. Mar. 1, 2017) ........................................ 18

*Consol. Rail Corp. v. Town of Hyde Park,*
   46 F.3d 473 (2d Cir. 1995) ..................................................................................... 18

*Damassia v. Duane Reade, Inc.,*
   250 F.R.D. 152 (S.D.N.Y. 2008) ...................................................................... 18, 21

*Henderson v. Trans Union L.L.C.,*
   No. 3:14-cv-00679-JAG,
   2016 U.S. Dist. LEXIS 59198 (E.D. Va. May 3, 2016) ......................................... 27

*In re Facebook, Inc.,*
   312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................ 26

*In re Farmers Ins. Co.,*
   738 F. Supp. 2d 1180 (W.D. Okla. 2010) .............................................................. 24

*In re Prudential*,
    148 F.3d 283 (3d Cir. 1998) ................................................................ 26

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................... 21

*Lemire v. Wolpoff & Abramson, LLP*,
    256 F.R.D. 321 (D. Conn. 2009) .........................................................21

*Madden v. Midland Funding, L.L.C.*,
    237 F. Supp. 3d 130 (S.D.N.Y. 2017) ........................................... 19, 21

*Manno v. Healthcare Revenue Recovery Group LLC*,
    289 F.R.D. 674 (S.D. Fla. 2013) ........................................................ 27

*Marisol A. by Forbes v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997) ............................................................... 21

*Massey v. On-Site Manager, Inc.*,
    285 F.R.D. 239 (E.D.N.Y. 2012) ................................................... 20, 26

*Miles v. Merrill Lynch & Co. (In re Initial Pub. Offerings Sec. Litig.)*,
    471 F.3d 24 (2d Cir. 2006) ................................................................. 17

*Patel v. Trans Union, L.L.C.*,
    308 F.R.D. 292 (N.D. Cal. 2015) .................................................. 21, 25

*Robinson v. Metro-N. Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) ............................................................... 20

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp. 2d 402 (E.D. Pa. 2010) ................................................ 26

*Smilow v. Sw. Bell Mobile Sys.*,
    323 F.3d 32, 41 n.9 (1st Cir. 2003) ................................................... 26

*Soutter v. Equifax Info. Servs., L.L.C.*,
    307 F.R.D. 183 (E.D. Va. 2015) .................................................. 21, 25

*Summerfield v. Equifax Info. Servs. L.L.C.*,
    264 F.R.D. 133 (D.N.J. 2009) ............................................................ 20

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................ 18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) ...................................... 23

*Visa Check/Mastermoney Antitrust Litig. V. Visa*,
    280 F.3d 124 (2d Cir. 2001) .............................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 17

*Wenning v. On-Site Manager, Inc.*,
    No. 14 Civ. 9693 (PAE),
    2016 U.S. Dist. LEXIS 81126 (S.D.N.Y. June 22, 2016) ....................................... 2

*Zivkovic v. Laura Christy L.L.C.,*
    No. 1:17-cv-553-GHW,
    2018 U.S. Dist. LEXIS 204113 (S.D.N.Y. Nov. 30, 2018) .................................... 22

## Rules, Statutes and Other Regulations

15 U.S.C. § 1681 ............................................................................ *passim*

Federal Rule of Civil Procedure 23 ................................................ *passim*

GBL § 380-a .............................................................................. 3, 4

## Secondary Source

H. Newberg & A. Conti, *Newberg on Class Action* § 21.30 (4th ed. 2002) ................................ 26

**INTRODUCTION**

Plaintiff, on behalf of herself and all others similarly situated, brings this action against Defendant CoreLogic Saferent, LLC ("Defendant" or "CoreLogic") for failure to accurately and completely report the disposition of New York Housing Court cases to prospective landlords in violation of the Fair Credit Reporting Act ("FCRA") and the New York analogue ("NYFCRA"). CoreLogic routinely generates consumer reports that are inaccurate in material respects because of its ███████ inability to stay current with its reporting of Housing Court cases.  Since CoreLogic lacks appropriate procedures and processes to ensure maximum possible accuracy of the information on which it reports, as required by the law, it is liable under the statutes.

CoreLogic's sloppy reporting has a real impact on potential tenants, particularly in New York, which has the largest housing court in the country.  It is well-recognized that landlords use the information as a means by which to blacklist and prevent purportedly litigious or financially irresponsible tenants from renting apartments.[1]  In the case of CoreLogic, it is particularly egregious and wrongful because the very same case was commenced against CoreLogic's corporate predecessor, First American Registry, Inc. ("First American") in 2004, and yet 15 years later, CoreLogic still maintains improper – and it might be fair to say shoddy – practices. Judge Kaplan approved the class action settlement in the First American case, but as New York State Senator Liz Kruger was quoted as later recognizing in 2014:  "It is frustrating. We thought we had stopped these tenant blacklists, but the companies have found a way around it, and now it looks like we are back where we started."  *Id.*

---

[1] *See* https://www.nytimes.com/2014/10/19/nyregion/a-tenant-blacklist-culled-from-tedium.html?_r=0, attached to the Declaration of Seth R. Lesser ("Lesser Decl.") as exhibit ("Ex.") 25.

1

Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff moves for certification (the "Motion") of the following class (the "Class"):

> All persons who within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report, were a party in a Housing Court Proceeding filed in New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the CoreLogic credit report referenced the Housing Court Proceeding but failed to include such disposition.

This case is the archetype of a lawsuit appropriate for class action treatment.  Plaintiff meets the core prerequisites required to certify the Class – numerosity, commonality, typicality and adequacy.  There are no individual issues:  for instance, there are none of the issues that most often get debated as to the propriety of class treatment, such as questions of class member individualized reliance, applications of varying statutes of limitations, or choice of law issues involving multiple state laws.  So long as Plaintiff proves that CoreLogic willfully (which, under the FCRA, means it recklessly disregarded its statutory duty[2]) failed to "follow *reasonable procedures* to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates," 15 U.S.C. § 1681e(b) (emphasis added), then Congress and the State of New York have provided for statutory damages of not less than $100 per violation and up to $1000 for each willful violation.  15 U.S.C. § 1681n.  That means that this case does not even present issues as to differing damages.  And, ultimately, the common and core liability question of whether CoreLogic's processes complied with the FCRA and the NYFCRA involves a classwide determination of analyzing the facts relating to CoreLogic's processes against those laws' requirements, a classwide common determination not involving individual issues.

---

[2] Willfulness under the FCRA entails "reckless disregard of statutory duty."  *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693 (PAE), 2016 U.S. Dist. LEXIS 81126, at *75 (S.D.N.Y. June 22, 2016).

The alternative to class certification is that CoreLogic would not be held to account for its failure to employ proper procedures.  The claims would be lost for all intents and purposes.  The consumer nature of this case underlines this point once made by Judge Richard Posner:

> The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.  But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no litigation at all.

*Carnegie v. Household Int'l., Inc.,* 376 F.3d 656, 661 (7th Cir. 2004).

Nor is there any material issue here as to ascertainably of the class – these days often a disputed issue in consumer class actions.



Due to its improper practices and procedures, Plaintiff alleges that CoreLogic willfully violated the FCRA and NYFCRA and seeks statutory and punitive damages.  As a member of the putative class, Plaintiff has no interests adverse to the Class and will adequately represent the Class.  Accordingly, Plaintiff's Motion should be granted.

## STATEMENT OF FACTS

### A.  *CoreLogic's Credit Reporting Practices*

CoreLogic is a company that prepares and sells credit reports to prospective landlords and real estate management companies that request screening information about prospective tenants.  This makes it a "consumer reporting agency" under 15 U.S.C. § 1681a(f) of the FCRA, and GBL § 380-a(e) of the NYFCRA and the reports that it issues constitute "consumer reports"

under 15 U.S.C. § 1681a(d) of the FCRA, and GBL § 380-a(c) of the NYFCRA.[3]  CoreLogic and

its predecessor First American entered into a contractual agreement with the New York Office of

Court Administration ("OCA") to purchase and obtain information from the OCA about

proceedings filed against tenants in New York Housing Courts in a daily electronic data feed.

CoreLogic had access to the electronic data stream from OCA from at least 2007 until July 2017.

Lesser Decl. Ex. 22 (OCA00001-5; 000035-36). ██████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████

**1.   The Process by Which CoreLogic Obtained NYC Housing Court Records**

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[3] These are undisputed points.
[4] All references to the transcripts of deponents are in the form of "[NAME] Tr." are attached as exhibits to the Lesser Declaration.

**2.   The Problems CoreLogic Faced In Acquiring NYC Housing Court Data**



██████████████████████████████████████████████████████

████████████████████████████████████████████████

**B. By Abandoning the OCA Feed, CoreLogic Recklessly
Disregarded Reasonable Procedures to Ensure Maximum Accuracy**

Starting in 2007 (and likely earlier), CoreLogic began purchasing Housing Court

information from New York City (and several other New York locations) via an electronic data

feed from the OCA, which it maintained until July 2017.  Lesser Decl. Ex. 22 (OCA00001-5;

000035-36).  That data feed was made available to CoreLogic every day the Housing Court was

in session, and contained all of the data pertaining to everything that occurred in every filed

proceeding in the Housing Court that day.  Lesser Decl. Ex. 25.  Among the data it received

through the feed was the name of the parties to each newly filed case, the address of the subject

building, the case index number, the case type, and the disposition of all previously filed cases.

In 2011, however, OCA decided to strip from the data feed the names of the parties and the

address of the property involved in the Housing Court cases.  Lesser Decl. Ex. 26

([https://www.nysenate.gov/newsroom/press-releases/liz-krueger/victory-tenants-sen-krueger-](https://www.nysenate.gov/newsroom/press-releases/liz-krueger/victory-tenants-sen-krueger-announces-courts-end-electronic-sale)
[announces-courts-end-electronic-sale](https://www.nysenate.gov/newsroom/press-releases/liz-krueger/victory-tenants-sen-krueger-announces-courts-end-electronic-sale)).





**C.** *Plaintiff's Experience Reflects CoreLogic's Shoddy Practices*

Ms. Feliciano resided in an apartment building located at 27 West 16th Street, New York, New York from approximately August of 2008 to July of 2015. Feliciano Tr. at 174:2-176:25. On or around September 25, 2014, FM United, LLC, the owner and landlord of the West 16th Street building commenced a summary non-payment proceeding against Ms. Feliciano in New York City Housing Court alleging that she owed rent in the total amount of $5,095.28 (the

"Housing Court Proceeding").  Lesser Decl. Ex. 19.  The purported non-payment stemmed from Ms. Feliciano's submission of her rent via ChasePay, instead of by check.  Feliciano Tr. at 177:13-24.  Ms. Feliciano assumed the rent was being paid because the funds were being withdrawn from her account; however, FM United was not receiving the payments and considered her to be delinquent in her rent.  *Id.* at 178:2-24; 179:20-180:14; 181:9-12.  Once Ms. Feliciano learned that her landlord was not receiving her rent payments, she stopped using ChasePay and promptly remitted all outstanding payments.  *Id.* at 181:13-182:22.  However, on or about September 25, 2014, before Ms. Feliciano could resolve the rent issue with FM United, it commenced the Housing Court Proceeding through its attorneys Borah, Goldstein, Altschuler, Nahins & Goidel, P.C. Lesser Decl. Ex. 19 (FELICIANO 00001-2).  On October 2, 2014, just eight days after the case was filed, FM United voluntarily discontinued the proceeding because it conceded that Ms. Feliciano did not owe the rent claimed.  Lesser Decl. Ex. 23 (OCA000042); Nahins Tr. at 13:11-19; 16:2-6.

Ms. Feliciano was completely unaware that FM United had even filed a non-payment proceeding against her.  She continued living at the West 16th Street apartment until she decided on her own that she was going to move out of her apartment, which she decided she would do in approximately May, 2015 when she learned about the latest rent increase.  Feliciano Tr. at 58:21-59:8.  Ms. Feliciano had been paying $2,450 in rent from 2013-2014 and FM United wanted to increase her rent to $3,000 upon her lease renewal in August of 2015.  *Id.* at 58:21-59:8.  In anticipation of her move, Ms. Feliciano submitted an application to the New York City affordable housing lottery system, which permits individuals to apply to rent housing at rents significantly below market levels at participating newly constructed apartment developments for which they qualify based on their income levels.  *Id.* at 70:16-71:18.  Ms. Feliciano applied to

12

numerous apartment developments through the lottery system.  Ms. Feliciano's name was drawn in the housing lottery and a housing development called Hunter's Point Common ("Hunter's Point"), located in Long Island City, advised her that she had been selected to submit an application.  *Id.* at 73:6-17.  At the request of Hunter's Point, Ms. Feliciano submitted additional documentation, including bank statements and employment confirmation, but later learned that her application to rent at Hunter's Point had been rejected.  *Id.* at 73:21-74:9; 75:16-22.

Ms. Feliciano received a letter from CoreLogic, dated July 22, 2015, informing her that it had provided a report to Hunter's Point which included certain information about the FM United summary non-payment proceeding.  Lesser Decl. Ex. 20.  Among other things, the letter stated that the "Disposition" of the proceeding was "CASE FILED."  *Id.*  Unclear of what that meant, Ms. Feliciano sought and retained the undersigned counsel – James Fishman.  Feliciano Tr. at 24:5-25:21.  Pursuant to her discussions with counsel, Ms. Feliciano reached out to Hunter's Point and requested the letter rejecting her application.  Feliciano Tr. at 88:20-89:17.  Hunter's Point sent Ms. Feliciano the letter, dated July 27, 2015, which she received approximately two months later.  Lesser Decl. Ex. 21; Feliciano Tr. at 90:14-91:16; 92:6-19.  The letter advised Ms. Feliciano that her application to Hunter's Point had been rejected because "[c]redit reports received for adult household members raise doubt about the ability to make consistent and timely rent payments based upon a composite score calculated."  Lesser Decl. Ex. 20 at FELICIANO 0008.  Hunter's Point's determination had been based on the fact that a case had been filed against Ms. Feliciano, as set forth in the consumer report issued by CoreLogic.  *Id.* at Ex. 8.

After being denied an apartment at Hunter's Point, Ms. Feliciano submitted an application to an apartment development in Rego Park, Queens.  Feliciano Tr. at 76:19-77:5.  Ms. Feliciano's submission to the Rego Park apartment was not made through the New York

lottery system.  *Id.*  However, Ms. Feliciano was denied an apartment there as well, again based on the adverse tenant report.  *Id.* at 78:19-79:5.

Unable to secure an apartment in New York City, Ms. Feliciano moved back to her parents' home in Valley Cottage, New York.  *Id.* at 58:7-12.  The move had a significant economic impact on her lifestyle and behavior.  *Id.* at 186:18-189:14.  Ms. Feliciano incurred the added expense of traveling from upstate New York into the city each day.  *Id.*  She also incurred additional costs in and out of the city related to her work and social life.  *Id.*  Furthermore, Ms. Feliciano continued to look for apartments in the city, which required her to incur additional costs she would not otherwise have sustained had she already been living in the city.  *Id.*

After living in the suburbs for approximately 16 months, Ms. Feliciano applied to rent an apartment in Forest Hills, Queens.  Feliciano Tr. at 175:2-5; 193:7-11.  Ms. Feliciano's application was initially rejected.  *Id.* at 193:12-194:14.  According to the broker, Ms. Feliciano did not get the apartment because of a case that had been filed against her.  *Id.*  Ms. Feliciano then took the time to advise the broker that her understanding was incorrect, and e-mailed her the expungement demand, which dismissed the landlord tenant proceeding previously filed against her.  *Id.*; Lesser Decl. Ex. 24 (Stipulation of Discontinuance with Prejudice).  The broker forwarded the Stipulation to the management company, and only then was Ms. Feliciano's application approved.  Feliciano Tr. at 194:9-25.  Ms. Feliciano moved into the Forest Hills apartment immediately and lived there for almost two years until she temporarily relocated to London because of work obligations.  *Id.* at 9:7-9; 195:2-4.

**D.** ███████████████████████████████

By using their online systems, landlords request background screening from CoreLogic, which instantaneously generates a consumer report providing them with certain information to

14

assist in their determination of whether to lease property to an applicant.  Harrison Tr. at 70:9-17.

[REDACTED]

**E.** ***The Impact of CoreLogic's Practices on***
    ***Consumers Seeking to Rent Residential Housing***

CoreLogic's shoddy and inadequate data collection practices resulted in adverse reports

common to the class. [REDACTED]

[REDACTED]



There is a material difference between a potential renter being subject to a pending case and a renter against whom the case has been closed.

**ARGUMENT**

When presented with a motion for class certification, the Court is required to "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as [it] would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *Miles v. Merrill Lynch & Co.* (I*n re Initial Pub. Offering Sec. Litig.)*, 471 F.3d 24, 42 (2d Cir. 2006). This analysis entails the resolution of "factual disputes relevant to each Rule 23 requirement," an obligation that "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id.* at 41; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (noting that the "rigorous analysis" of the Rule 23 requirements "will entail some overlap with the merits of the plaintiff's underlying claim"). "[I]n deciding a certification motion, district courts must not consider or a resolve the merits of the claims of the purported class." *Ansoumana v. Gristedes*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001) (AKH) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999), cert. denied, 529 U.S. 1107, (2000)).

Federal Rule of Civil Procedure 23(a) permits class certification if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately

protect the interests of the class.  Fed R. Civ. P. 23(a).

**I.   The Requirements of Rule 23(a) Are Satisfied**

   **A.   Members of the Class Are So Numerous That Joinder is Impracticable**

Rule 23(a)(1) "numerosity is presumed at a level of 40 members."  *Consol. Rail*

*Corp. v. Town of Hyde Park*, 46 F.3d 473, 483 (2d Cir. 1995).  ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████  Since Plaintiff's proposed Class contains over ████

members, there is no doubt here that the numerosity requirement has been met.

   **B.   There are Questions of Law and Fact Common to Plaintiff and the Class**

"Rule 23(a)'s commonality prerequisite is satisfied if there is a common issue that

'drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Sykes v.*

*Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (quoting *Dukes*, 564 U.S. at 338).

Commonality "does not mean that all issues must be identical as to each member, but it does

require that plaintiffs identify some unifying thread among the members' claims that warrant[s]

class treatment."  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (citation

omitted).  "Commonality requires the plaintiff to demonstrate that the class members have

suffered the same injury."  *Clark v. Trans Union, L.L.C.*, No. 3:15cv391, 2017 U.S. Dist. LEXIS

29738, at *18-19 (E.D. Va. Mar. 1, 2017) (internal quotations and citation omitted). "Generally,

courts have liberally construed the commonality requirement to mandate a minimum of one issue

common to all class members." *Madden v. Midland Funding, L.L.C.*, 237 F. Supp. 3d 130, 154

(S.D.N.Y. 2017) (internal citation and quotation omitted).

 CoreLogic's common

practice of reporting incomplete and inaccurate information affected thousands of people, and

constitutes the "unifying thread" that Rule 23(a)(2) requires.  Common questions here include,

but are not limited to the following:

> (1) whether CoreLogic maintained a uniform practice of publishing inaccurate and incomplete data related to the disposition of Housing Court proceedings in its consumer reports;

> (2) whether CoreLogic's reporting of inaccurate and incomplete Housing Court dispositions violates the FCRA/NYFCRA;

> (3) whether CoreLogic followed reasonable procedures to ensure maximum possible accuracy with respect to the information reported concerning the individuals about whom the reports relate;

> (4) whether CoreLogic's alleged conduct was willful;

> (5) the amount of statutory damages that should be awarded to each class member, per violation of law; and

> (6) the appropriate amount of any punitive damages that should be awarded for CoreLogic's willful violation of the FCRA/NYFCRA.

Data produced by CoreLogic demonstrates that hundreds of members of the putative Class were commonly affected by its practice of issuing reports without accurately or completely recording the disposition of Housing Court proceedings.  Because the Class claims present common factual and legal issues, and straightforward mathematical damage calculations, this is the very paradigm of a Class that should be certified.

Indeed, in *Massey v. On-Site Manager, Inc*., 285 F.R.D. 239 (E.D.N.Y. 2012), a case also involving a tenant screening bureau's inaccurate reporting of Housing Court cases to prospective landlords, Judge Cogan granted plaintiff's motion for certification of a class comprising of consumers "who had outdated civil actions reported against them" in violation of 15 U.S.C. § 1681(c).  *Id.* at 243.  Judge Cogan concluded that "the presence of commonality appears obvious since, as defendant concedes, it reported outdated information as a result of a centralized flaw in its software system and this flaw affected all of the reports it created about the class members during the relevant time period."  *Id.* at 244.  So, too, did Judge Rodriguez, who granted plaintiff's certification motion in *Summerfield v. Equifax Info. Servs. L.L.C.*, 264 F.R.D. 133 (D.N.J. 2009).  Judge Rodriguez found commonality to exist because plaintiff and the proposed class "allege that a misleading form disclosure letter was sent following a public records dispute . . . [and that] all plaintiffs claim that they were injured in substantially the same way by the execution of Defendant's allegedly unlawful policies or practices under similar factual circumstances."  *Id.* at 139.

### C.  Ms. Feliciano's Claims are Typical of the Class Claims

Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-N. Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001).  "A named plaintiff's

claim is 'typical' under Rule 23(a)(3) if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Madden*, 237 F. Supp. 3d at 156 (internal citation and quotation omitted).  Courts generally discuss commonality and typicality together.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 582 (S.D.N.Y. 2008) (collecting cases); *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) ("The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rule 23(a)(2) and (3).").  However, "[t]he typicality element is distinct from commonality in that typicality focuses on 'claims or defenses,' rather than on 'questions of law or fact.'"  *Lemire v. Wolpoff & Abramson. L.L.P.*, 256 F.R.D. 321, 326 (D. Conn. 2009) (quoting Fed. R. Civ. P. 23(a)).  Claims "only need to share the same essential characteristics, and need not be identical."  *Damassia*, 250 F.R.D. at 158 (citation omitted).  Moreover, the typicality requirement is not "highly demanding."  *Id.*

Ms. Feliciano's claims arise out of the same claims as the Class – CoreLogic's routine practice of failing to ensure accurate reporting of Housing Court dispositions in its consumer reports.  Individualized issues are not present here.  Therefore, typicality is met in this case. *Accord Clark*, 2017 U.S. Dist. LEXIS 29738, at *23 (typicality met because "Clark's interests align with those of the class, and she alleges to have suffered the same injury"); *Souter v. Equifax Info. Servs., L.L.C.*, 307 F.R.D. 183, 201, 208-12 (E.D. Va. 2015) (concluding that plaintiff's claims of "inaccuracy of the consumer reports, the reasonableness of the procedures alleged to cause these inaccuracies, whether Equifax's conduct was willful and the determination of statutory damages" "will tend to advance the claims of the putative class members accordingly"); *Patel v. Trans Union, L.L.C.*, 308 F.R.D. 292, 306 (N.D. Cal. 2015) (typicality

met because "[t]here appear to be no claims that the named plaintiff brings that class members cannot bring, or vice versa").

### D.  Ms. Feliciano and Class Counsel Will Fairly and Adequately Protect the Interests of the Class

Adequate representation under Rule 23(a)(4) considers whether:  "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000).  In examining the interests of the named Plaintiff, "the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members."  *Zivkovic v. Laura Christy L.L.C.*, No. 1:17-cv-553-GHW, 2018 U.S. Dist. LEXIS 204113, at *19 (S.D.N.Y. Nov. 30, 2018) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).

Ms. Feliciano has demonstrated her commitment to the action from the inception of the case.  She assisted in the discovery process by answering interrogatories and producing documents, and made herself available from London, where she was recently relocated on a three-year assignment for work, to sit for her deposition in New York.  Ms. Feliciano testified extensively that she is aware of the commitment it takes to be a class representative and is willing to put the Class interests above her own.  Feliciano Tr. at 41:21-42:5; 171:20-173:25. She further testified that she will continue to make herself available to her counsel and for trial, in the event this case progresses to that point.  *Id.* at 172:14-173:25.  Accordingly, Ms. Feliciano's interests are not agnostic to those of the Class.

With respect to the qualifications of Plaintiff's counsel, it is entirely reasonable and fair to say that counsel for Ms. Feliciano have extensive backgrounds, history, and records of success in representing consumers in the areas of landlord/tenant law, complex litigation and class

actions, particularly consumer class actions.  Lesser Decl. ¶¶ 4-8; Exs. 27, 31.   Adequacy has been established in this case.

## II.  The Requirements of Rule 23(b)(3) Are Satisfied

Once the 23(a) criteria are established, the Plaintiffs must then demonstrate that they are entitled to certification in at least one of the 23(b) categories.  *Ansoumana*, 201 F.R.D. at 85. Plaintiff submits that this Class should be certified under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other methods for the fair and efficient adjudication of the controversy."  Fed R. Civ. P. 23(b)(3).

### A.  Questions of Law or Fact Predominate Over All Class Members

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (internal citation and quotation omitted).  The analysis entails "careful scrutiny to the relation between common and individual questions in a case."  *Id.*  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  *Id.* (alterations in original) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:50 (5th ed. 2012)).  The "predominance requirement calls only for predominance, not exclusivity, of common questions."  *Visa Check/Mastermoney Antitrust Litig. v. Visa,* 280 F.3d 124, 140 (2d Cir. 2001).

Plaintiff meets the predominance element required under Fed. R. Civ. P. 23(b)(3).  As the Supreme Court noted in one of its seminal Rule 23 decisions, "[p]redominance is a test readily

met in certain cases alleging consumer … fraud…." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997).  This is particularly such a case since, as noted above, there are no individualized reliance, statute of limitations, choice of law, or similar issues.

Every putative Class member's claim arises out of CoreLogic's recognized and widespread failure to accurately and completely report on Housing Court dispositions in New York, a result of CoreLogic's conscious and knowing failure to ensure and exercise reasonable procedures through which to assure maximum possible accuracy of the data it provides to its customers. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████  Whether CoreLogic's ████████████

████████  with acquiring landlord/tenant data in New York violates its obligations under the FCRA/NYFCRA to ensure "maximum possible accuracy of the information concerning the individual about whom the report relates," and whether CoreLogic's conduct in this regard was willful – meaning reckless under the FCRA – are legal questions that do not depend on individualized considerations.

This is particularly true because Plaintiff and the putative Class seek statutory damages and an award of punitive damages which are determined on the basis of a common proof.  "[T]he recovery of statutory damages under the FCRA is not dependent on proof of injury or harm . . . [and] [t]herefore, plaintiffs are not required to present individualized proof of injury from each class member to obtain an award of statutory damages." *In re Farmers Ins. Co.*, 738 F. Supp. 2d 1180, 1226 (W.D. Okla. 2010) (citation omitted).  The FCRA "does not require a named plaintiff or a class member to prove actual harm and/or damage in order to obtain statutory damages and does not specify criteria for determining the amount of statutory damages." *Ashby v. Farmers*

*Ins. Co.*, 592 F. Supp. 2d 1307, 1317 (D. Or. 2008).  In addition, any requirement of proof of

actual harm as to all class members in this case would almost certainly render a class action

unfeasible."  *Id.*

As such, common issues of law or fact predominate for all members of the Class.  *See*

*Soutter*, 307 F.R.D. at 213-18 (predominance satisfied because "the most significant issues in the

case pertain to uniform conduct by Equifax — its uniform credit reporting procedures; its

knowledge and notice of the defects in its systems; and the willfulness of its conduct"); *Patel*,

308 F.R.D. at 308-09 ("To the extent that there are individual issues, they do not predominate

over the several key shared issues that dominate this case."); *Clark v. Experian Info. Sols., Inc.*,

8:00-1217-24, C/A No. 8:00-1218-24, C/A No. 8:00-1219-24, 2002 U.S. Dist. LEXIS 20410, at

*10 (D.S.C. June 26, 2002) (predominance analysis met because, among other things,

"controlling legal issues are governed by 15 U.S.C. § 1681e").

### B.  A Class Action is a Superior Means of Adjudicating the Issues in this Case

In addition to establishing the predominance of common issues, plaintiff is required to

undergo an analysis establishing the superiority of the class action, through four factors

contemplated under Rule 23(b)(3):  (A) the class members' interests in individually controlling

the prosecution or defense of separate actions; (B) the extent and nature of any litigation

concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the

likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  While Rule

23(b)(3) sets out four individual factors for courts to consider, manageability "is, by the far, the

most critical concern in determining whether a class action is a superior means of adjudication."

*Sykes*, 780 F.3d at 82 (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4.72 (5th ed. West 2014)).

Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *See In re Prudential*, 148 F.3d 283, 315 (3d Cir. 1998).  *See also In re Facebook, Inc.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) ("The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication.") (citations omitted).

A class action is superior to other available methods where a class resolution of the common issues among class members "outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone – particularly in light of the relatively modest amount of statutory damages."  *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010).  "Clearly, relegating these claims to a single action is highly preferable to requiring every class member to find counsel and bring their own action."  *Massey*, 285 F.R.D. at 250.  "That might enable defendant to severely limit its liability, but that of course is irrelevant to a finding of superiority."  *Id.* (citation omitted).

As the leading class action treatise recognizes:  "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public."  H. Newberg & A. Conte, *Newberg on Class Actions* § 21.30 (4th ed. 2002); *accord Smilow v. Sw. Bell Mobile Sys.*, 323 F.3d 32, 41 n.9 (1st Cir. 2003) ("[t]he core purpose of Rule 23(b)(3) is to vindicate the claims of consumers … whose individual claims would be too small to warrant litigation" and "[c]lasses such as this one

26

that are made up of consumers are especially likely to satisfy the predominance requirement."). As the Court found in *Manno v. Healthcare Revenue Recovery Group LLC,* "the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiff's claims . . ." *Manno*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) (internal quotations and citation omitted).

Plaintiff easily meets the superiority prong required under Fed. R. Civ. P. 23(b)(3). To Plaintiff's knowledge, there are no related actions pending in New York, and thus the putative Class members have no interest in prosecuting or defending separate actions. Lesser Decl. ¶ 9. Nor is the Class here unmanageable because, as discussed, the common issues predominating this case are straightforward and there are no individual issues presented. Since there is no "foresee[able] difficulty managing the class action, and, like many cases brought under the FCRA, the class members do not have a strong interest in individually prosecuting the case," this requirement is met. *Henderson v. Trans Union L.L.C.*, No. 3:14-cv-00679-JAG, 2016 U.S. Dist. LEXIS 59198, at *16-17 (E.D. Va. May 3, 2016) (internal quotations and citation omitted).

### C.  The Class Is Ascertainable

In addition to the requirements of Rule 23(a) and Rule 23(b), the Second Circuit has "recognized an implied requirement of ascertainability in Rule 23." *Brecher v. Republic of Arg.*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation and citation omitted). "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting 7A Charles A. Wright et al., F*ederal Practice & Procedure §* 1760 (3d ed. 1998)). "A class is ascertainable

when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Charrons v. Pinnacle Group NY LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ Accordingly, the Class is decidedly "sufficiently definite" and Plaintiff meets the requirement of ascertainability.

## CONCLUSION

For all of the reasons set forth above, Plaintiff respectfully requests that, pursuant to

Rules 23(a), 23(b)(3) and 23(g) of the Federal Rules of Civil Procedure, the Court (i) grant her

Motion for class certification; (ii) designate the named Plaintiff as Class Representative; and (iii)

designate the undersigned as Class Counsel.

Dated: Rye Brook, New York
      January 18, 2019

                                        Respectfully submitted,

                                        KLAFTER OLSEN & LESSER LLP

                                        _____

                                        Seth R. Lesser
                                        Alexis Castillo
                                        Two International Drive, Suite 350
                                        Rye Brook, New York  10573
                                        (914) 934-9200

                                        FISHMANLAW, PC
                                        James B. Fishman
                                        305 Broadway, Suite 900
                                        New York, New York  10007
                                        (212) 897-5840

                                        *Attorneys for Plaintiff*