UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

CLAUDINNE FELICIANO,

                                                                   **Case No. 1:17-cv-5507**

      **Plaintiff,**

      -against-

**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC**

      **Defendant.**

------------------------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD IN OPPOSITION TO PLAINTIFF'S <u>MOTION FOR CLASS CERTIFICATION</u>**


TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022

*Attorneys for Defendant*

Defendant, CoreLogic Rental Property Solutions, LLC (RPS"), by counsel, submits this memorandum of law in support of its Motion to Supplement the Record in opposition to Plaintiff's Motion for Class Certification (the "Motion").

### **RELEVANT BACKGROUND**

Discovery closed in January 2019, and RPS's opposition to Plaintiff's Motion for Class Certification was due in February 2019.  Plaintiff, however, recently produced witnesses and documents that underscore the need to deny her request for class certification in this action. Indeed, this remarkable new evidence and testimony, which was previously unavailable to RPS and the Court, makes clear that Plaintiff's proposal for class certification is anything but "rigorous" and has instead been built upon an entirely faulty foundation.  Supplementation is thus appropriate.

In January and February 2019, the parties briefed Plaintiff's Motion for Class Certification. (Dkt. Nos., 35, 54, 67).  In connection with that briefing, RPS moved to strike the declarations of two previously-undisclosed declarants that Plaintiff had identified in support of the Motion for Class Certification.  Through two spreadsheets attached to their declarations (Exhibits 29 and 30 to Plaintiff's Motion for Class Certification), those witnesses purported to identify the class that Plaintiff now seeks to certify.  (Dkt. No. 50.)  On April 24, 2019, the Court denied RPS' Motion to Strike the declarations, but it allowed discovery of the declarants, stating:  "The case is still in its pre-trial phase, and it would not prejudice anyone to allow plaintiff to use the declarations of Yates and Abadie, even though plaintiff failed to identify them in its initial disclosures.  Defendant, if it wishes, may take their depositions within the next two weeks."  (Dkt. No. 80.)

RPS then requested that the witnesses be made available on May 2 or 3.  *See* Declaration of Timothy St. George ("St. George Decl.") ¶ 3.  Plaintiff's counsel requested alternate dates to accommodate their schedules.  *See id*.  The depositions were then cooperatively scheduled for May

8, with deposition subpoenas served by RPS on both witnesses. *Id*. On May 6, 2019, counsel for Plaintiff responded that one of the two declarants had suffered a serious injury requiring extended hospitalization and surgery, and that the depositions would need to be postponed. *Id*. ¶ 4. On May 16, RPS checked in on the status of the injured witness and requested that the depositions be held on June 3 or 4. *Id*. ¶ 5. Those dates also did not work for Plaintiff's counsel. *Id*. RPS then requested alternate availability, including on July 1. *Id*. After initially failing to respond, Plaintiff's counsel requested alternate dates, while also noting that the entire week of July 8 was unavailable due to trial attendance. *Id*. The witnesses were then finally made available to be deposed on July 16; two days before the July 18 oral argument on class certification. *Id*. ¶ 6. The transcripts of those depositions were delivered to counsel for RPS on July 24, after being ordered on an expedited basis by RPS. *Id*. ¶ 7. Relevant portions of these transcripts are attached to the St. George Declaration as Exhibits A and B.

Additionally, on Friday July 12, after the close of business, and a mere three business days before the already-scheduled oral argument on Plaintiff's Motion for Class Certification, Plaintiff's counsel produced voluminous documents supposedly reflecting the work/notes of the two declarants. *Id*. ¶ 11. Counsel for RPS objected in writing to the late nature of that document production, which Plaintiff had apparently withheld for months even after the Court permitted the depositions of the two undisclosed declarants in April. *Id*. ¶. Relevant portions of that belated document production are attached to the St. George Declaration as Exhibit D.

For the reasons that follow, the newly-taken deposition testimony and late-produced documents are material to an assessment of issues relating to class certification, and they were unavailable to RPS until well after RPS filed its opposition to class certification. The record should thus be supplemented to account for this new evidence.

**ARGUMENT**

Motions to supplement should be granted when the evidence proposed to be supplemented is relevant to a pending motion before the court. *See, e.g., Ortiz v. Town of Stratford*, No. 3:07-cv-1144, 2008 U.S. Dist. LEXIS 65139, *3 (D. Conn. Aug. 22, 2008) ("The court sees no reason why the defendants' motion should not be granted.  The substance of the conversation between Gugliotti and Ortiz is relevant to the material facts of this case and therefore the recording is relevant as well.").  Such motions are also particularly appropriate when the information that is sought to be introduced into the record was not previously made available to the moving party. *See, e.g., Ortiz-Alvarado v. Gomez*, Civ. No. 14-209 (MJD/SER), 2014 U.S. Dist. LEXIS 112036, 2014 WL 3952434, at *3 (D. Minn. Aug. 13, 2014) (granting motion to supplement finding that information was relevant to issues of a motion for class certification and not previously available). Both standards are easily met here, and especially considering Plaintiff's late productions.

**I.   This Court should supplement the opposition to Plaintiff's Motion for Class Certification with the Newly-Transcribed Deposition Testimony.**

Plaintiff argues that the classes are ascertainable based on the declarations she obtained from the two previously-undisclosed individuals (William Yates and Margarita Abadie), who both viewed certain case-related information at public access terminals in New York City housing courts to determine if and when an identified case had been "disposed."  (Pltf's Mot. at Exs. 29-30.)  Due to Plaintiff's failure to disclose these witnesses at any point during the discovery period, this Court previously granted RPS leave to depose both individuals after the close of discovery. (Dkt. No. 80.)  As detailed above, those depositions were delayed due to health and scheduling issues outside the control of RPS. *See* St. George Decl. ¶¶ 3–5.  Regardless, the recently-provided testimony of both witnesses is material to the issues before the Court on Plaintiff's Motion for Class Certification.

Plaintiff brings the action on behalf of a putative class that is defined in the operative Complaint defined as:

> All persons who within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report, were a party in a Housing Court Proceeding filed in a New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the CoreLogic credit report referenced the Housing Court Proceeding but failed to include such disposition.

(Am. Compl., ¶ 11.)  Thus, the class definition hinges on the existence of one of three types of dispositions for housing court actions: dismissals, discontinuances, and withdrawals.  But the declarations submitted do not even attempt to identify such cases.  Both declarations and the attached spreadsheets purport only to identify cases where any type of "disposition" was supposedly present as of 2019.  Moreover, Plaintiff's proposed class further fails due to a lack of ascertainability because it seeks to compare: (1) records of New York housing court actions that were gathered and then later reported by RPS years ago; with (2) the content of data she alleges is currently viewable on the public access terminals in 2019.  Yet, there is no evidence about the state of each public record at the time that it was collected and/or returned by RPS, including whether a disposition was then publicly available.  Those failures of proof were identified in RPS's opposition to Plaintiff's Motion for Class Certification, and they alone should be decisive.  The deposition testimony of William Yates and Margarita Abadie, however, has also led to the discovery of even more problems with the proposed class lists that also preclude class certification.

First, RPS has discovered that the claim by Mr. Yates and Ms. Abadie in their declarations that the proposed class members are associated with housing court actions that had been "disposed" is incorrect.  Both witnesses testified at their depositions that they included cases that were listed as "inactive" on the public access terminals as having a "disposition" for purposes of their proposed class lists.  Indeed, Ms. Abadie testified that she very "frequently" listed inactive

- 5 -

cases as having a "disposition" for purposes of her declaration and the attached spreadsheet that Plaintiff provided to this Court. (Deposition of Margarita J. Fraser de Abadie on 7/16/19 ("Abadie Depo."), attached as **Exhibit A** to St. George Decl., 59:4-24; 60:7-16.) Mr. Yates confirmed the same practice for his list. (Deposition of William Yates on July 16, 2019 ("Yates Depo"), attached as **Exhibit B** to St. George Decl., 31:7-21.) However, the administrative designation of "inactivity" through the public access terminals is not a "disposition," *i.e.*, the actual resolution of a case through a judicial order and final determination by a court. *See, e.g., Nieborak v. W54-7, LLC*, NY Slip Op. 31040(U) ¶ 4 (Sup. Ct.) (noting the variety of dispositions in housing court actions); NY CLS NYC Civil Act § 110 ("The determination of a housing judge shall be final and shall be entered and may be appealed in the same manner as a judgment of the court."); *cf.* BLACK'S LAW DICTIONARY 567 (5th ed. 1979) ("disposition" is defined as s a "final settlement or determination" and uses the illustration "the court's disposition of the case."). Rather, it is simply an administrative entry regarding the current state of activity in the case. Thus, Plaintiff's claim that she has identified "dispositions" for cases – the lynchpin of her request for class certification – is incorrect for untold numbers of proposed class members whose cases are instead simply inactive. The proposed classes fail.

Second, both Mr. Yates and Ms. Abadie testified that, because they recorded any type of "disposition" on their proposed class lists, they had included cases on their proposed class lists where judgment had been entered *against* the tenant and *in favor* of the landlord. (Abadie Depo., 51:24-52:5; Yates Depo, 41:4-10). Yet, a disposition of judgment in favor of the landlord is the <u>exact opposite</u> type of disposition from the three types of dispositions listed in the type of class definition (*i.e.*, withdrawals, discontinuances, and dismissals). That issue would also exist for untold numbers of proposed class members.

Third, the proposed inclusion of class members who were parties to cases where judgment was entered *against* the consumer is inconsistent with Article III standing and the allegations in the Complaint. The harm Plaintiff alleges in the operative Complaint is the alleged damage that results from RPS' failure to report that proceedings have been "resolved *favorably* to the consumers," thus creating "erroneous negative inferences about the consumers." (Am. Compl. ¶ 3) (emphasis added). Yet, the class sought to be certified is not so constrained. Simply put, no consumer can be said to plausibly assert, consistent with the requirements of Article III standing and/or the allegations plead by Plaintiff, that the failure to *report a judgment against them* caused them harm, such that they should now be included as a member of the proposed class. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (an Article III injury under the FCRA must be "a 'concrete' injury must be '*de facto*'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense); *see, e.g., Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) (finding a lack of standing: "[I]f the allegations in the complaint are true, Taylor sold the majority of her KeyCorp holdings for more money than it was worth, thereby benefitting from defendants' alleged breach of fiduciary duty."); *Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341, 1354 (11th Cir. 2001) (holding that plaintiff lacked Article III standing when the alleged breach of fiduciary duty, "if anything, increased his retirement distributions").

Fourth, the flawed nature of the proposed class lists and how they were recorded is also evident in light of the declarants' troubling deposition testimony, including the admitted lack of standards in terms of what the declarants claimed to be a case "disposition." The spreadsheets identified by the declarants as their proposed class lists purport to reflect instances where the "disposition" for a case was present before the time that RPS issued a report with a record for that same case that did not reflect a disposition. To do so, the declarants set forth the date of the report

and then the date of the "disposition" identified at the public access terminal based on their review. However, a review of the spreadsheets presented by the two declarants in Exhibits 29 and 30 to Plaintiff's Motion for Class Certification demonstrates that almost 1,000 entries on those spreadsheets have recorded "dispositions" on just eleven single days between May 9, 2015 and August 19, 2015.[1] In fact, more than 350 of the housing court cases and consumers now proposed for inclusion in the class were supposedly "disposed" in Manhattan housing court during a three-day span between May 27-29, 2015, which is the date range also includes the date that Plaintiff's Manhattan record was "disposed" on May 29, 2015 (as discussed further in Section II below). Likewise, more than 300 cases were also supposedly disposed in the Bronx housing court during a three-day span between August 17-19, 2015. That contention is utterly implausible, and it is not supported by any rigorous testing or even attempted explanation.[2]

In summation, the deposition testimony confirms that the flaws in the proposed class lists are pervasive.

## II.     The Court should supplement the record with portions of Plaintiff's document production, which was not received until almost six months after the close of discovery without any explanation by Plaintiff.

Discovery in this action closed in January 2019. Yet, Plaintiff was apparently withholding hundreds of pages of documents compiled by the two declarants in connection with the preparation of their proposed "class lists." That withholding occurred despite numerous, on-point discovery

---

[1] Those dates are May 27-29, 2015 (all Manhattan); June 23-25, 2015 (all Queens); July 21-22, 2015 (all Brooklyn); and August 17-19, 2015 (all Bronx). (*See* Pltf's Mot. at Exs. 29, 30.)

[2] As noted in prior briefing, Plaintiff also took no discovery of the New York housing court clerks at any point during the discovery period. Instead, she was evidently content to use the recordings of the two lay declarants who have no training or experience in record collection or the New York City housing court systems. It is evident, however, that these two and three-day date ranges – each within specific courthouses – correlate to the times that the New York City housing court system *was transferring computer systems* by individual courthouse. (*See* Def's Opp. at Ex. D.) These do not represent any type of "disposition."

requests seeking that information, including Request For Production 29 ("All documents supporting Plaintiff's contention that her putative class claims are properly certifiable as a class action… including with respect to the implicit element of ascertainability."), Request For Production 30 ("All documents supporting Plaintiff's contention that her putative class is ascertainable."), and Request For Production 31 ("Any and all data compilations, emails, handwritten or typewritten notes and/or tangible things in your possession, custody and/or control that relate in any way to the Complaint or the allegations in the Complaint."). *See* **Exhibit C** to St. George Decl.

Those documents generally confirm the declarant's testimony at their depositions that they were recording "inactive" cases as having a disposition. They also confirm, however, that this defect in claimed class membership affected not only untold numbers of proposed class members, but also Plaintiff Feliciano herself. Ms. Abadie is the declarant that reviewed Plaintiff Feliciano's case (LT-079004-14/NY) at the public access terminal, where she identified the case has having been "disposed" as of May 29, 2015. (*See* Pltf's Mot. at Ex. 29, row 862.) Yet, that claim by Ms. Abadie in her declaration that the public access terminal reflected a disposition for Plaintiff's identified housing court proceeding is factually untrue. The newly-produced notes from Ms. Abadie's research reflect that Plaintiff's case was listed as "inactive" on the public access terminal as of May 29, 2015, *i.e.*, that it continued to lack any actual disposition at the time a report was prepared by RPS. *See* St. George Decl. ¶ 13; **Exhibit D** to St. George Decl.

For that reason, after properly excluding "inactive" cases from the proposed class lists, Plaintiff *would not even be a member of the class* lists that she has proposed for certification. That issue further underscores her failure to adequately ascertain class, as well as her inadequacy and atypicality as a proposed class representative. *See, e.g., Alpern v. UtiliCorp United, Inc.*, 84 F. 3d

1525, 1539 (8th Cir. 1996) (class representatives must be part of the class); *Weiner v. Snappy Bev. Corp.*, 2010 U.S. Dist. LEXIS 79647, at *42 n.21 (S.D.N.Y. Aug. 3, 2010) (named plaintiffs failure to be definitively identified using their proposed method counsels against ascertainability); *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 n.9 (3d Cir. 2013) (plaintiff's ability to meet ascertainability requirement "further in doubt" due to possibly not being identified by proposed method); *see also Coyle v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 97762, at *8 (D.N.J. Aug. 30, 2011) ("[P]laintiff [is] an inadequate class representative because plaintiff was subjected to unique defenses that could become the focus of the entire litigation.").

Furthermore, despite claiming on her proposed class lists and the newly-produced documents that the action was disposed of on May 29, 2015, Plaintiff elsewhere claims in her class certification briefing that her housing court action was disposed on October 2, 2014. (Dkt. No. 36 at p. 12.) She makes no attempt to reconcile these conflicting statements. A potential "defense that is central to the litigation precludes a finding of typicality because of the danger that the unique defense will preoccupy the class representative to the detriment of the interests of absent class members." 5 MOORE'S FEDERAL PRACTICE § 23.24[5]. These individualized issues even for the named Plaintiff will dominate any trial in this case.

### III. The supplemental evidence confirms that class certification must be denied.

The new evidence that has been revealed – despite Plaintiff's efforts to delay and obstruct its production – is also independently decisive of the need to deny class certification. To be clear, however, the Motion for Class Certification should also be denied for the numerous reasons that are set forth in RPS' February 2019 opposition brief. Rather than helping Plaintiff meet her burden to prove that the class members can be ascertained, the supplemental evidence undercuts that claim. For all of these reasons, the Motion for Class certification should be denied.

## CONCLUSION

WHEREFORE, Defendant, CoreLogic Rental Property Solutions, LLC, respectfully requests that the Court: (1) grant this Motion; (2) deny Plaintiff's Motion for Class Certification; and (3) Grant RPS such other and further relief as may be appropriate.

Dated: July 29, 2019

New York, New York

TROUTMAN SANDERS LLP


By: /s/ Timothy J. St. George
Timothy J. St. George (*pro hac vice*)
1001 Haxall Point
Richmond, VA 23219
Tel: (804) 697-1650
Fax: (804) 698-5118

*Attorneys for Defendant*
