UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
CLAUDINNE FELICIANO,

        Plaintiff,

 -against-

CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC,

        Defendant.
------------------------------------------------------------ X

**OPINION AND ORDER
GRANTING MOTION TO
CERTIFY CLASS**

17 Civ. 5507 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/29/19

ALVIN K. HELLERSTEIN, U.S.D.J.:

  This case is about alleged inaccuracies in tenant data registries. Plaintiff Claudinne Feliciano ("plaintiff" or "Feliciano"), on behalf of herself and others similarly situated, filed suit against defendant CoreLogic Rental Property Solutions, LLC ("CoreLogic" or "defendant"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and under the New York Fair Credit Reporting Act ("NYFCRA"), General Business Law ("GBL"), Art. 25, § 380 *et seq.* Plaintiff alleges that defendant has failed to insure the accuracy of bulk tenant data before selling the data and the resulting reports to prospective landlords, who rely on them to assess and screen potential tenants. Plaintiff alleges that, because of delays and deficient practices in collecting and updating the status of New York Housing Court ("Housing Court") records reported to landlords, defendant has inaccurately reported that housing suits against tenants were ongoing, when in fact the suits had been favorably resolved in favor of the tenant. Plaintiff seeks statutory and punitive damages, in addition to attorneys' fees.

Plaintiff moves for class certification of a class defined as all persons who within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report, were a party in a Housing Court proceeding filed in a New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the CoreLogic credit report referenced the Housing Court proceeding but failed to include such disposition. For the reasons discussed below, I grant plaintiff's motion to certify the class.

**Background**

Plaintiff is a New York resident. Defendant is a Delaware corporation with a principal place of business in Maryland. Defendant regularly conducts business in New York. The complaint alleges that CoreLogic operates as a credit reporting agency within the meaning of the statutes, and that it profits by selling credit reports to landlords. First Amended Complaint ("Compl."), ECF 10, ¶ 17.

1. <u>Allegations Applicable to the Class at Large</u>

One source of defendant's data is purchased electronic records from the New York State Office of Court Administration ("OCA"), corresponding to Housing Court proceedings, including eviction proceedings based on non-payment of rent and holdovers following termination of tenancy. Compl. ¶ 2. Defendants describe the collection as a manual process, in which records are individually obtained by CoreLogic researchers and then updated for six months following collection. Defendant's Memorandum of Law in Opposition to Motion for Class Certification ("Opp."), ECF 54, at 5.

Because of the volume of court records and the technological limitations of public access computers, defendant allegedly struggled to maintain current records. The number of monthly Housing Court cases filed reached as high as 8,275. Opp. at 5. Several factors allegedly compromised the data collection process, including limited numbers of terminals, competition for access with other terminal users, terminal service outages, general unavailability of paper records, and delayed access to offsite paper record storage. Deloatche Decl., ECF 55, ¶¶ 13–14. CoreLogic admits that its "field researchers were often unable to stay current with respect to collection of newly-filed New York housing court actions." Opp. at 6.

In June 2017, CoreLogic began using nationwide housing court data supplied by non-party LexisNexis Risk Data Management, Inc. ("LexisNexis"). Opp. at 11; Ernst Decl., ECF 56, ¶ 6. LexisNexis collected data using a different set of protocols, but the distinctions in protocols are minor. Opp. at 12–13.

CoreLogic adopted a protocol requiring its employees to retrieve any updates to cases that were filed within the past six months. After six months, CoreLogic assumed that the case had been abandoned by the parties, but nevertheless designated the status as "Case Filed." Opp. at 10.[1]

CoreLogic uses collected data to generate reports for landlords on prospective tenants, providing two separate three-digit scores based on secret, proprietary algorithms. Br. at 15. The first score, referred to as the "CrimSafe Decision," is based on the applicant's criminal record. The second score, known as "ScorePlus" or "Score Decision," is based on the

---

[1] Defendant's explanation of this issue is not consistent with its other stated positions. If the case is presumed to be abandoned, then a "case filed" designation is misleading, and it does not accurately describe CoreLogic's best assessment of the cases' probable disposition, as reflected in its updating policy. If, on the other hand, the cases are still pending—with the potential to reflect adversely on a tenant's risk to a prospective landlord—further updates would be indicated.

3

applicant's data from Experian (a credit reporting agency), collections agencies, Housing Court filings, and Teletrack, a proprietary CoreLogic product. CoreLogic represents that ScorePlus allows prospective landlords to assess the riskiness of a potential tenant and the likelihood that the tenant will miss monthly rental payments, cause damage, or be unable to renew the lease.

The complaint alleges that CoreLogic fails, as a matter of routine policy and practice, to update previously filed records upon the receipt of information relating to dispositions of cases. Compl. ¶ 26. Accordingly, plaintiff alleges that many Housing Court proceedings are improperly reported as active (with a designation of "Case Filed") even after the proceedings have been dismissed, discontinued, withdrawn, or otherwise resolved favorably to the tenant. Compl. ¶ 26. CoreLogic has allegedly reported 4,229 individuals who had been the subject of a New York Housing Court proceeding, in which the disposition was inaccurately described as "Case Filed." Plaintiff alleges that these violations and others were willful, within the meaning of the statute.

> The complaint adopts the following definition for the class:
>
> All persons who within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report, were a party in a Housing Court Proceeding filed in a New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the CoreLogic credit report referenced the Housing Court Proceeding but failed to include such disposition.

Compl. ¶ 11. Plaintiff estimates that, based on initial discovery, at least 2,600 potential class members match this definition. Br. at 3. These individuals, contained in a list, constitute the proposed class.

4

### 2. Allegations Specific to the Proposed Lead Plaintiff

Feliciano alleges that on September 25, 2014, her landlord began a summary non-payment proceeding against her in New York City Housing Court, alleging unpaid rent and legal fees. Compl. ¶ 31. On October 7, 2014, plaintiff alleges that her landlord, recognizing that the alleged rent had previously been paid, unilaterally filed a notice of discontinuance, terminating the proceeding. Compl. ¶ 32. Later, in July 2015, Feliciano applied for an apartment in the Hunters Point Common housing development, but her application was denied. Compl. ¶¶ 35, 44. In connection with her application, CoreLogic provided a report of plaintiff to Hunters Point, which reported the 2014 Housing Court suit against her but incorrectly reported the disposition as "Case Filed," when in fact the case had been discontinued. Compl. ¶¶ 35–43. Plaintiff alleges that she received a letter from Hunters Point advising plaintiff that the basis of the denial was information contained in the CoreLogic report. Compl. ¶ 44. Feliciano's report also contained other adverse information, which negatively affected her credit score. St. George Decl., Ex. F, ECF 58-3, at CLF 90–91. Feliciano alleges that she similarly applied to, and was rejected by, an apartment development in Rego Park, Queens, based on her CoreLogic tenant report. Br. at 13–14. Because plaintiff was unable to rent an apartment in New York City, she returned to live with her parents in Valley Cottage, New York, and incurred additional costs.

Defendant represents that Feliciano's case information was manually collected by an individual researcher at a public access terminal on June 29, 2015, after the case had already been discontinued. DeLoatche Decl. ¶ 15. The researcher recorded the status of the case as "Case Filed," and the entry was never updated. DeLoatche Decl. ¶ 15.

More generally, the complaint alleges that CoreLogic's failure to reflect the actual and accurate status of thousands of Housing Court cases in the consumer reports to CoreLogic's

subscribers has injured the class members who were the subject of these inaccurate reports. Compl. ¶ 27. Based on CoreLogic's inaccurate reports, the complaint alleges that class members are entitled to statutory damages. Compl. ¶ 50.

## Discussion

### A. Legal Standard

#### 1. Class Certification

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class,'" and such a device "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. at 700–701). Fed. R. Civ. P. 23(a) provides that members of a class may bring a suit as a class action, if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class; and (4) the representative parties will fairly and
> adequately protect the interests of the class.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 350.

Plaintiff seeks certification of the class pursuant to Rule 23(b)(3), which is satisfied when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *See also Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 104 (S.D.N.Y. 2011). Pertinent issues to this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Class actions require courts to perform a "rigorous analysis" before certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 348, 351. The Second Circuit has taught, in the context of class certification:

> 1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). The district court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *Id.*

2. <u>Substantive Law</u>

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Wenning v. On-Site Manager, Inc.*, No. 14-cv-9693 (PAE), 2016 WL 3538379, at *8 (S.D.N.Y. June 22, 2016) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). "FCRA provides a private right of action against businesses that use consumer reports but fail to comply" with a duty imposed by the Act. *Wilson v. Corelogic SafeRent, LLC*, No. 14-cv-2477 (JPO), 2017 WL 4357568, at *3 (S.D.N.Y. Sept. 29, 2017) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. at 52). The FCRA creates a duty that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

> The statute provides for the following damages:
>
> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a

> permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n(a).

"[T]he elements of a willfulness claim are (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless." *Wenning v. On-Site Manager, Inc.*, 2016 WL 3538379, at *8. "[U]nlike with negligence claims, actual damages and causation are not elements of a willfulness claim." *Id.* at *23. "Willful" in the FCRA context means "reckless disregard of statutory duty." *Safeco Ins. Co. of America v. Burr*, 551 U.S at 57; *see also Jones v. Halstead Mgmt. Co., LLC*, 81 F. Supp. 3d 324, 333 (S.D.N.Y. 2015). "FCRA does not provide for strict liability for a CRA [credit reporting agency] that reports inaccurate information"; liability does not attach unless "the agency failed to follow reasonable procedures in generating the inaccurate report." *Wenning*, 2016 WL 3538379, at *16 (quoting *Whelan v. Trans Union Credit Reporting Agency*, 862 F. Supp. 824, 829 (E.D.N.Y. 1994)) (quotation marks omitted); *see also Wilson v. Corelogic SafeRent, LLC*, 2017 WL 4357568, at *3.

Section 380-j(a) of the New York General Business Law provides:

> (a) No consumer reporting agency shall report or maintain in the file on a consumer, information:
> . . .
> (3) which it has reason to know is inaccurate.

Section 380-j(e) of the General Business Law provides that "[c]onsumer reporting agencies shall maintain reasonable procedures designed to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 380-k of the General Business Law provides that "[e]very consumer or reporting agency shall maintain

9

reasonable procedures designed to avoid violations of sections . . . three hundred eighty-j . . . of this article . . . ."

**B.  Application**

1.  Standing

As a preliminary matter, defendant challenges class members' standing to assert their claims. "To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Feliciano's rental application was denied on the basis of her ScorePlus Score, of which her inaccurate Housing Court case disposition status was a contributing factor. I hold that Feliciano has suffered a concrete and particularized injury and has standing to assert her claims.

The remaining members of the proposed class also have standing. Plaintiffs allege that the practices of CoreLogic in inaccurately aggregating and reporting Housing Court dispositions created a "risk of real harm," and that individuals would be denied housing because of inaccurate reports. *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549.

2.  Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over certain out-of-state class members. Opp. at 35. The argument is irrelevant. Jurisdiction is based on the collection of data in New York state courts, wherever the class member resides. In light of this connection to the forum, defendant's citation to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1775 (2017), is inapplicable.

3. <u>Numerosity</u>

Certification is appropriate when "the number of class members is sufficiently large so that joinder of all members would make litigation needlessly complicated and inefficient." *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y.2002). In this Circuit, "numerosity is presumed at a level of 40 members," *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995), although the "[d]etermination of practicability depends on all the circumstances surrounding the case, not on mere numbers." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. at 104 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). CoreLogic does not contest numerosity, and the proposed class satisfies the numerosity requirement.

4. <u>Commonality</u>

The second requirement under Rule 23(a) is that the action must raise "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single common question of law or fact may suffice to satisfy the commonality requirement." *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. at 105 (citing *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997)).

This case presents a number of common questions. *See* Br. at 19. These include whether defendant maintained a uniform practice of publishing inaccurate Housing Court disposition statuses; whether such inaccurate reporting violates the FCRA and NYFCRA; whether defendant followed reasonable procedures to ensure the accuracy of its records; whether

11

the alleged conduct was willful; the appropriate amount of statutory damages; and the possible award of punitive damages.

Defendant argues that a number of individual issues preclude class certification. *See* Opp. at 27–28. These include 1) variations in the timing of data; 2) number of updates or audits to the file; 3) case-specific barriers to information updates, such as loss of terminal access; and 4) variations in procedures adopted by different data collectors and vendors, including CoreLogic, LexisNexis, and LexisNexis' subcontractor NYE. All of these information resources ultimately derived from the same New York Housing Court sources. These issues ultimately address a single, uniform inquiry: whether defendant's information collection procedures were sufficient and reasonable. *See Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 203 (E.D. Va. 2015) (in a § 1681e(b) case, finding commonality requirement met despite "various collection methods" because "[e]ach procedure is common across the class and capable of classwide resolution based on jury findings.").

The commonality requirement is satisfied by the proposed class.

5.  Typicality

The third prerequisite to a class action, known as typicality, is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). "The third and fourth requirements of Rule 23(a) tend to merge with the commonality requirement, as all three 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Pub. Employees' Ret. Sys. of*

*Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. at 106 (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. at 158 n.13).

The fact that records of plaintiff were derived solely from records collected by CoreLogic, and not as a result of data acquired by LexisNexis, does not distinguish her from prospective class members whose data derived from alternative sources. Opp. at 33. Feliciano's claims are typical of the class and arise out of the same allegations and claims. There are no individualized claims or defenses.

The proposed class meets the requirements of typicality.

6. Adequacy

The last prerequisite to a class action is whether the representative parties "will fairly and adequately protect the interests of the class," known as the adequacy requirement. Fed. R. Civ. P. 23(a). "That determination requires a two pronged inquiry: (1) class counsel must be 'qualified, experienced, and generally able to conduct the litigation; and (2) class members must not have antagonistic interests to one another." *Banyai v. Mazur*, 205 F.R.D. 160, 164 (S.D.N.Y. 2002) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Feliciano has actively participated in the litigation up to the present time. There is no indication that she possesses any interests adverse to the class. Plaintiff's counsel is experienced in the relevant law and in conducting class actions. Lesser Decl., ECF 36-1, ¶¶ 4–8; Ex. 27, ECF 36-29. Feliciano and her counsel are adequate class representatives.

7. Rule 23(b)(3)

   a.   *Predominance*

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, (2016). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Id.* (*quoting* 2 W. Rubenstein, *Newberg on Class Actions* § 4:49, at 195–96 (5th ed. 2012)).

With the class, common issues predominate individual issues. The allegations as to CoreLogic's collection, updating, and reporting of case information are common to all members of the class. Because the class seeks statutory damages, there is no requirement for individual class members to demonstrate actual harm or for determination of damages. A finding of predominance is consistent with other FRCA cases. *See, e.g., Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. at 214.

Defendant argues that individual issues—especially the accuracy of the individual reports and the willfulness of CoreLogic—predominate. "[W]hether a report is accurate may involve an individualized inquiry." *Gomez v. Kroll Factual Data, Inc.*, No. 13-CV-0445-WJM-KMT, 2014 WL 1456530, at *3 (D. Colo. Apr. 14, 2014) (quoting *Owner–Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008)). Here, defendant takes the position that the accuracy, timing, and technique used to acquire Housing Court data of each class member would require individualized class determinations. Moreover, it argues that its methods have varied over time, creating an individualized question of reasonableness in each case.

Defendant's arguments are not persuasive. To the extent that the reports' accuracy entails differentiated determinations, these are straightforward issues apparent on the basis of documentary evidence. Moreover, to the extent that defendant would seek to preemptively litigate any and all possible defenses, and the reasonableness of CoreLogic and its partners' information aggregation procedures, these are merits issues not suited to the class certification inquiry.

Common issues predominate within the proposed class.

### b. Superiority

"The superiority requirement asks courts to balance, in terms of fairness and efficiency, the advantages of a class action against those of alternative available methods of adjudication." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 351 (S.D.N.Y. 2015) (quoting *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 91 (S.D.N.Y. 2007)); Fed. R. Civ. P. 23(b)(3).

Here, a class action represents a superior method of resolving the controversy. There are significant efficiency gains to aggregation, and the use of a class action will enable members of the class to prosecute claims even for relatively modest statutory damages.

### c. Ascertainability

The Second Circuit has "recognized an 'implied requirement of ascertainability.'" *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). "[T]he touchstone of ascertainability is whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (quoting 7A Charles

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1760 (3d ed. 1998)). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

The class, based on documented records produced by CoreLogic, is ascertainable. From a list of 4,229 Housing Court Reports issued during the relevant period, plaintiff's counsel cross-checked court records in New York, Queens, Staten Island, Kings, and Bronx counties, identifying 3,996 matching proceedings. In 2,605 of those cases, the courts had recorded a disposition of the cases before the relevant report had issued, leading to an inaccurate report. The individuals associated with this cases constitute the scope of the class.

Defendant makes much of the fact that the determination of the class, and the procedures complained of, both ultimately derive from the same source, Housing Court records. This line of attack is unpersuasive. Contrary to defendant's arguments, Opp. at 20, plaintiff does not take the position that the records available at Housing Court public access terminals are intrinsically unreliable. Rather, defendant's alleged failures in developing suitable procedures to access and update the information forms that basis of plaintiff's claim. Further, plaintiff relies not on the intrinsic accuracy of the information generated on the list of names, but rather adopts them insofar as they identify individuals about whose putative housing cases CoreLogic has made reports. The proposed class definition fully encompasses the individuals identified in the list, and the words indicating the disposition of their cases.

The identity of the prospective class members is thus sufficiently definite. Accordingly, the proposed class meets the requirements for acertainability.

## Conclusion

For the reasons stated, plaintiff's motion to certify the class is granted. In light of good cause shown and consistent with my prior order, defendant's motion to seal is granted. *See Lugosch III v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). Pursuant to my order at the July 18, 2019 hearing, the development of proposed notice, and expert discovery, shall continue during the pendency of an appeal pursuant to Fed. R. Civ. P. 23(f), if any. The clerk shall terminate the motions (ECF 35, 40).

SO ORDERED.

Dated: July 29, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge