**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

**CLAUDINNE FELICIANO,**

                                                      **Case No. 1:17-cv-5507**

        **Plaintiff,**

        **-against-**

**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC**

        **Defendant.**

------------------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO RECONSIDER ORDER GRANTING MOTION TO CERTIFY CLASS

TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022

*Attorneys for Defendant*

Defendant, CoreLogic Rental Property Solutions, LLC (RPS"), by counsel, and pursuant to Local Civil Rule 6.3, submits this memorandum of law in support of its Motion for Reconsideration of the Court's Order Granting Motion to Certify Class ("Order") (Dkt. No. 89).

## RELEVANT BACKGROUND

New evidence has become available that is critical to the rigorous analysis the Court must conduct to certify a class under Rule 23, but which the Court did not have available to it when the parties briefed Plaintiff's Motion to Certify Class.  This new evidence – in the form of deposition testimony permitted by the Court and the belated production of previously-withheld documents – also demonstrates that class certification was clear error.  In particular, the new evidence proves that: (1) the proposed classes reflect innumerable consumers that do not have standing to pursue claims against RPS; (2) Plaintiff's deeply-flawed "class" lists do not, in fact, reflect the class alleged in the Amended Complaint; (3) there is no actual record before the Court of the class that was proposed/certified; and (4) Plaintiff's declarants even misidentified that Plaintiff herself had a "disposition" on the public access terminal in 2019.

RPS was also highly diligent in seeking this withheld evidence, which Plaintiff had withheld and/or not disclosed in violation of the Federal Rules of Civil Procedure.  Without any explanation, five months after RPS filed its brief opposing class certification, and on the eve of oral argument, Plaintiff simply produced hundreds of pages of additional documents supposedly reflecting the notes and research of the two declarants.  RPS did not know that those documents even existed until that production was made.  RPS was also forced to seek a Court Order allowing it to depose Plaintiff's previously-undisclosed declarants, and those depositions were then delayed due to serious health issues of one witness and further delay by Plaintiff's counsel, with the depositions occurring just two days before oral argument.  While RPS identified these evidentiary

obstacles to the Court at oral argument, RPS did not at that time have the transcripts needed to file the supplemental brief that this Court would need.  Instead, the transcripts of those depositions were ordered on an expedited basis and presented to the Court by RPS mere days after their receipt.

For the reasons that follow, while the Court previously denied RPS's motion to supplement the record with this new evidence as "moot" because the decision on class certification was issued shortly after that filing by RPS, this new evidence warrants reconsideration of the opinion granting class certification on multiple grounds.

## ARGUMENT

Rule 6.3 of the Court's Local Rules provide for reconsideration of a court order, which the Court may grant where the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error of manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013); Local Civil Rule 6.3.  When reconsideration is sought on the basis of newly-available evidence, the Court looks at whether "(1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision."  *In re Rezulin Products Liability Litig.*, 224 F.R.D. 346, 350 (S.D.N.Y. 2004).  Manifest injustice is present when the new evidence could have altered the outcome of the motion.  *Henry v. Morgan's Hotel Grp., Inc.*, 2018 U.S. Dist. LEXIS 9824, at *19-20 (S.D.N.Y. Jan. 22, 2018); *United States v. Int'l Bhd. of Teamsters*, 247 F. 3d 370, 392 (2d Cir. 2001).  Both standards are met here, and especially in the context of a motion certifying a class.

I.    **Manifest injustice will result if the Court opts not to reconsider its decision because the newly available evidence proves the class cannot be certified.**

The previously-unavailable evidence demonstrates Plaintiff falls woefully short of meeting her burden to prove that the class can be lawfully certified.  Plaintiff argues that the classes are

lawful based on the declarations she obtained from the two previously-undisclosed individuals (William Yates and Margarita Abadie), who both viewed certain case-related information at public access terminals in New York City housing courts to determine if and when an identified case had been "disposed." (Pltf's Mot. at Exs. 29-30.) These declarations were integral to the Court's determination of class certification. The Complaint proposed the class as:

> All persons who within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report, were a party in a Housing Court Proceeding filed in a New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the CoreLogic credit report referenced the Housing Court Proceeding but failed to include such disposition.

(Am. Compl., ¶ 11; *see also* Order at 2.) This Court certified the class as the 2,605 "individuals, contained in a list" submitted by Plaintiff. Order at 4.

The Court found that Plaintiff could ascertain her class because she produced a list of 2,600 cases that "match th[e]definition" in the Amended Complaint, with the Court then holding that those individuals "constitute the scope of the class." (Order at 4, 16.) Although the Court based its finding of class certification on the declarations submitted by Yates and Abadie, the newly-available evidence demonstrates that the classes certified would contain untold numbers of class members who lack Article III standing, that the declarations do not actually identify individuals that constitute the scope of the proposed class that was certified, and that the list that this Court certified was based on representations of the declarants that were inaccurate.

### A.    The class contains innumerable consumers who lack Article III standing.

Each proposed class member must establish that he or she has suffered sufficient injury to give rise to Article III standing and proof of standing be consistent with the rigorous requirements of Rule 23(a) and (b). *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("The class must therefore be defined in such a way that anyone within it would have standing."). With that

bedrock principle in mind, the Supreme Court's 2016 decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), confirmed and elaborated on this Court's weighty gate-keeping duties as to Article III standing, and specifically in FCRA actions. *Spokeo* held that alleging a violation of the FCRA "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement." *Id.* at 1547. Instead, "a 'concrete' injury must be '*de facto*'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense. *Id.* at 1548. The injury must also be "particularized," meaning that "it 'must affect the plaintiff in a personal and individual way.'" *Id.*

The newly-produced evidence confirms that the Court has certified a class that consists of consumers who lack Article III standing in at least two ways.

<u>First</u>, both Mr. Yates and Ms. Abadie testified in their depositions that they included cases that had been "disposed" of in any way on their proposed class lists. (Deposition of Margarita J. Fraser de Abadie on 7/16/19 ("Abadie Depo."), attached as **Exhibit A** to Declaration of Timothy St. George ("St. George Decl."), 51:24-52:5.); (Deposition of William Yates on July 16, 2019 ("Yates Depo."), attached as **Exhibit B** to St. George Decl., 41:4-10.) Along with any other possible type of disposition, both witnesses confirmed that included class members who were parties to cases where judgment was entered *against* the consumer. The inclusion of those consumers is inconsistent with Article III standing and the allegations in the Complaint. The harm Plaintiff alleges in the operative Complaint is the alleged damage that results from RPS' failure to report that proceedings have been "resolved *favorably* to the consumers," thus creating "erroneous negative inferences about the consumers." (Am. Compl. ¶ 3) (emphasis added). Yet, the new testimony confirms that the class certified is not so constrained, and there is no evidence of a class that would be so constrained.

Simply put, no consumer can be said to plausibly assert, consistent with the requirements of Article III standing and the allegations plead by Plaintiff, that the failure to *report a judgment against them* caused them harm, such that they should now be included as a member of the proposed class. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) (an Article III injury under the FCRA must be "a 'concrete' injury must be '*de facto*'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense); *see, e.g., Taylor v. KeyCorp*, 680 F.3d 609, 613 (6th Cir. 2012) (finding a lack of standing: "[I]f the allegations in the complaint are true, Taylor sold the majority of her KeyCorp holdings for more money than it was worth, thereby benefitting from defendants' alleged breach of fiduciary duty."); *Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341, 1354 (11th Cir. 2001) (holding that plaintiff lacked Article III standing when the alleged breach of fiduciary duty, "if anything, increased his retirement distributions").

Second, the Court's "standing" rationale for the absent class members was based on the contention that RPS had reported "inaccurate" information about the absent class members by failing to include a pre-existing disposition for a housing court action on the identified reports, which could cause the absent class members to be "denied housing."  (Order at p. 10.)  And, the declarants' claim of a pre-existing "disposition" for the 2,605 cases was the basis for their claim of inaccuracy.  But, RPS has now discovered that the claim by Mr. Yates and Ms. Abadie in their declarations that the proposed class members are associated with housing court actions that had previously been "disposed" is incorrect.  Both witnesses testified at their depositions that they included cases that were listed as "inactive" on the public access terminals as having a "disposition" for purposes of their proposed class lists.  Indeed, Ms. Abadie testified that she very "frequently" listed inactive cases as having a "disposition" for purposes of her declaration and the attached spreadsheet that Plaintiff provided to this Court.  (Abadie Depo., 59:4-24; 60:7-16.)  Mr.

Yates confirmed the same practice for his list.   (Yates Depo., 31:7-21.)   However, the administrative designation of "inactivity" through the public access terminals is not a "disposition," *i.e.*, the actual resolution of a case through a judicial order and final determination by a court. *See, e.g., Nieborak v. W54-7, LLC*, NY Slip Op. 31040(U) ¶ 4 (Sup. Ct.) (noting the variety of dispositions in housing court actions, but which does not identify "inactive"); NY CLS NYC Civil Act § 110 ("The determination of a housing judge shall be final and shall be entered and may be appealed in the same manner as a judgment of the court."); *cf.* BLACK'S LAW DICTIONARY 567 (5th ed. 1979) ("disposition" is defined as a "final settlement or determination" and uses the illustration "the court's disposition of the case.").   Rather, it is simply an administrative entry regarding the current state of activity in the case, thereby indicating that Defendant's "Case Filed" entry may well be correct for these individuals.

Thus, Plaintiff's claim that she had identified missing "dispositions" for cases – the lynchpin of her request for certification and associated claim of "inaccuracy" – was incorrect for untold numbers of proposed class members whose cases are instead simply inactive.  The Court's reliance on that representation – both generally in certifying the class[1] and specifically with respect to its standing analysis – cannot stand in light of this new evidence.

   **B.   New evidence demonstrates that the public access terminals did not display a "disposition" even for Plaintiff, which gives rise to unique defenses and underscores that the class has not been ascertained using a rigorous method.**

The documents produced after the close of discovery generally confirm the declarant's testimony at their depositions that they were recording "inactive" cases as having a disposition.  They also confirm, however, that this defect in claimed class membership affected not only untold numbers of proposed class members, but also *Plaintiff herself*.  Ms. Abadie is the declarant that

---

[1] This defect is not only relevant to standing; it confirms that the class certified by the Court under the adopted definition and associated reasoning constitutes clear error based on the declarants' misstatements.

reviewed Plaintiff Feliciano's case (LT-079004-14/NY) at the public access terminal, where she identified the case as having been "disposed" as of May 29, 2015.  (*See* Pltf's Mot. at Ex. 29, row 862.)  Yet, that claim by Ms. Abadie in her declaration that the public access terminal reflected a disposition for Plaintiff's identified housing court proceeding is factually untrue.  The newly-produced notes from Ms. Abadie's research reflect that Plaintiff's case was simply listed as "inactive" on the public access terminal as of May 29, 2015, *i.e.*, that it continued to lack any disposition at the time a report was prepared by RPS.  *See* St. George Decl. ¶ 13; **Exhibit D** to St. George Decl.

Thus, Plaintiff's own circumstances raise unique issues that underscore the need for individual review of the circumstances of each proposed class member, which is a process that is incompatible for class certification, and which underscores the fact that the class lists are not the product of any rigorous analysis.  *See, e.g., Weiner v. Snappy Bev. Corp.*, 2010 U.S. Dist. LEXIS 79647, at *42 n.21 (S.D.N.Y. Aug. 3, 2010) (named plaintiffs' failure to be definitively identified using their proposed method counsels against ascertainability); *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 n.9 (3d Cir. 2013) (plaintiff's ability to meet ascertainability requirement "further in doubt" due to possibly not being identified by proposed method for remainder of the class).

Furthermore, despite claiming on the newly-produced documents (and her proposed class lists) that her housing court action was disposed of on May 29, 2015, Plaintiff elsewhere claims in her class certification briefing that her housing court action was disposed on October 2, 2014. (Dkt. No. 36 at p. 12.)  She made no attempt to reconcile these conflicting statements highlighted by the newly-produced documents, which will also need to be explored at trial.  A potential "defense that is central to the litigation precludes a finding of typicality because of the danger that the unique defense will preoccupy the class representative to the detriment of the interests of absent

class members."  5 MOORE'S FEDERAL PRACTICE § 23.24[5]; *accord Coyle v. Hornell Brewing Co.*, 2011 U.S. Dist. LEXIS 97762, at *8 (D.N.J. Aug. 30, 2011) ("[P]laintiff [is] an inadequate class representative because plaintiff was subjected to unique defenses that could become the focus of the entire litigation.").  These individualized issues even for the named Plaintiff will dominate any trial in this case.  Thus, reconsideration is required.

### C.   The new evidence demonstrates the dates relied upon to create the class list are not reliable indicators of individuals included in the class.

The flawed nature of how the class lists were developed and recorded is also evident in light of the declarants' troubling deposition testimony, including the admitted lack of standards in terms of what the declarants claimed to be a case "disposition."  This new testimony makes plain that the use of the class lists proposed is clear error and that certification must be reconsidered.

The spreadsheets identified by the declarants as their proposed class lists purport to reflect instances where the "disposition" for a case was present before the time that RPS issued a report with a record for that same case that did not reflect a disposition.  However, because the untrained, lay declarants admitted during their depositions not employing any rigorous (or correct) methodology in connection with what they deemed a "disposition," it is unsurprising that the class lists reflect unexplained flaws.  For instance, a review of the spreadsheets presented by the two declarants in Exhibits 29 and 30 to Plaintiff's Motion for Class Certification demonstrates that almost 1,000 entries on those spreadsheets have recorded "dispositions" on just eleven single days between May 9, 2015 and August 19, 2015.[2]  In fact, more than 350 of the housing court cases and consumers now proposed for inclusion in the class were supposedly "disposed" in Manhattan housing court during a three-day span between May 27-29, 2015, which date range also includes

_____

[2] Those dates are May 27-29, 2015 (all Manhattan); June 23-25, 2015 (all Queens); July 21-22, 2015 (all Brooklyn); and August 17-19, 2015 (all Bronx).  (*See* Pltf's Mot. at Exs. 29, 30.)

the date that Plaintiff's Manhattan record was "disposed" on May 29, 2015 (as discussed further in Section I.B above).  Likewise, more than 300 cases were also supposedly disposed in the Bronx housing court during a three-day span between August 17-19, 2015.  That contention is utterly implausible, and it is not supported by any rigorous testing or attempted explanation.[3]  Thus, the use of the proffered class lists to support certification was clear error.

## II.    The Court should grant the motion to reconsider because the evidence was not available to RPS despite its diligence.

With respect to the unproduced documents, discovery in this action closed at the end of January 2019.  Yet, Plaintiff was apparently withholding hundreds of pages of documents compiled by the two declarants in connection with the preparation of their proposed "class lists."  That withholding occurred despite numerous, on-point discovery requests seeking that very information, including Request For Production No. 29 ("All documents supporting Plaintiff's contention that her putative class claims are properly certifiable as a class action… including with respect to the implicit element of ascertainability."), Request For Production No. 30 ("All documents supporting Plaintiff's contention that her putative class is ascertainable."), and Request For Production No. 31 ("Any and all data compilations, emails, handwritten or typewritten notes and/or tangible things in your possession, custody and/or control that relate in any way to the Complaint or the allegations in the Complaint.").  *See* **Exhibit C** to St. George Decl.  Indeed, despite the fact that the researchers were evidently compiling these documents between November 2018 and early January 2019, Plaintiff failed to produce these documents until mid-July, which

---

[3] As noted in prior briefing, Plaintiff also took no discovery of the New York housing court clerks at any point during the discovery period.  Instead, she was evidently content to use the recordings of the two lay declarants who have no training or experience in record collection or the New York City housing court systems.  It is evident, however, that these two and three-day date ranges – each within specific courthouses – correlate to the times that the New York City housing court system *was transferring computer systems* by individual courthouse.  (*See* Def's Opp. at Ex. D.)  These do not represent any type of "disposition."

was months after the close of discovery, months after briefing on her Motion for Certification was complete, and only days before the hearing on class certification.  This evidence was not available to RPS or the Court not because of any lack of diligence on RPS' part, but because Plaintiff withheld these documents in the face of RPS's diligence to obtain them, and in violation of the Federal Rules of Civil Procedure.

Likewise, the declarants' deposition testimony was not available despite RPS' diligence. In January and February 2019, the parties briefed Plaintiff's Motion for Class Certification. (Dkt. Nos., 35, 54, 67).  In connection with that briefing, RPS moved to strike the declarations of two previously-undisclosed declarants that Plaintiff had identified in support of the Motion for Class Certification.  (Dkt. No. 50.)  Through two spreadsheets attached to their declarations (Exhibits 29 and 30 to Plaintiff's Motion for Class Certification), those witnesses purported to identify the class that Plaintiff now seeks to certify.  On April 24, 2019, the Court denied RPS' Motion to Strike the declarations, but it allowed discovery of the declarants, stating:  "The case is still in its pre-trial phase, and it would not prejudice anyone to allow plaintiff to use the declarations of Yates and Abadie, even though plaintiff failed to identify them in its initial disclosures.  Defendant, if it wishes, may take their depositions within the next two weeks."  (Dkt. No. 80.)

RPS then requested that the witnesses be made available on May 2 or 3.  *See* St. George Decl. ¶ 3.  Plaintiff's counsel requested alternate dates to accommodate their schedules.  *See id*. The depositions were then cooperatively scheduled for May 8, with deposition subpoenas served by RPS on both witnesses.  *Id*.  On May 6, 2019, counsel for Plaintiff responded that one of the two declarants had suffered a serious injury requiring extended hospitalization and surgery, and that the depositions would need to be postponed.  *Id*. ¶ 4.  On May 16, RPS checked in on the status of the injured witness and requested that the depositions be held on June 3 or 4.  *Id*. ¶ 5.

Those dates also did not work for Plaintiff's counsel. *Id.* RPS then requested alternate availability, including on July 1. *Id.* After initially failing to respond and having to again be prompted, Plaintiff's counsel requested alternate dates, while also noting that the entire week of July 8 was unavailable due to trial attendance. *Id.* The witnesses were then finally made available to be deposed on July 16; two days before the July 18 oral argument on class certification. *Id.* ¶ 6. The transcripts of those depositions were delivered to counsel for RPS on July 24, after being ordered on an expedited basis by RPS. *Id.* ¶ 7. Relevant portions of these transcripts are attached to the St. George Declaration as Exhibits A and B.

During the hearing on Plaintiff's Motion for Class Certification, counsel for RPS referenced the late-produced documents and information learned from the depositions of the late-disclosed witnesses. Oral Arg. Tr. at 17, attached to St. George Decl. as **Exhibit E**. However, the transcripts of the depositions were not yet available, and the documents were not part of the record due to their disclosure on the eve of the hearing. Within three business days of receiving the deposition transcripts, RPS filed a motion to supplement the record with the previously unavailable evidence. (Dkt. No. 86). After RPS moved to supplement the record, the Court entered its Order certifying the class. (Dkt. No. 89). Two days later, the Court denied RPS' Motion to supplement on the grounds that it was "moot" given the issuance of the class certification decision. (Dkt. No. 90.) Accordingly, the Court decided the Motion without the benefit of this evidence, which RPS diligently sought from Plaintiffs.

At bottom, the newly available evidence exposes fatal flaws in the class list this Court relied upon in granting class certification. Therefore, the Court should reconsider its decision to grant Plaintiff's Motion for Class Certification.

## CONCLUSION

WHEREFORE, Defendant, CoreLogic Rental Property Solutions, LLC, respectfully requests that the Court: (1) grant this Motion; (2) reconsider and deny Plaintiff's Motion for Class Certification; and (3) Grant RPS such other and further relief as may be appropriate.

Dated:  August 7, 2019

New York, New York

TROUTMAN SANDERS LLP


By:  /s/ Timothy J. St. George
Timothy J. St. George (*pro hac vice*)
1001 Haxall Point
Richmond, VA 23219
Tel:  (804) 697-1650
Fax:  (804) 698-5118

*Attorneys for Defendant*