J7IAAFELC                    Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    CLAUDINE FELICIANO,

4                  Plaintiff,

5             v.                          17 CV 5507 (AKH)

6    CORELOGIC SAFERENT, LLC,

7                  Defendant.

8    ------------------------------x
                                         New York, N.Y.
9                                        July 18, 2019
                                         2:30 p.m.
10
     Before:
11
                     HON. ALVIN K. HELLERSTEIN,
12
                                         District Judge
13
                             APPEARANCES
14
     FISHMAN LAW, P.C.
15        Attorneys for Plaintiff Feliciano
     BY:  JAMES FISHMAN
16
     KLAFTER OLSEN LESSER, LLP
17        Attorneys for Plaintiff Feliciano
     BY:  SETH R. LESSER
18
     TROUTMAN SANDERS, LLP
19        Attorneys for Defendant Corelogic
     BY:  SETH R. LESSER
20

21

22

23

24

25

```
 1            (Case called)

 2            THE COURT:  Good afternoon.

 3            MR. FISHMAN:  For the plaintiff, James Fishman,

 4   Fishman Law P.C.

 5            MR. LESSER:  Also for the plaintiff, Seth Lesser, of

 6   Klafter Olsen Lesser.

 7            MR. ST. GEORGE:  For the defendant, Timothy St.

 8   George, from the law firm of Troutman Sanders.

 9            THE COURT:  Be seated, everybody.

10            Plaintiff's motion?

11            MR. FISHMAN:  Yes, your Honor.

12            THE COURT:  Go ahead.  Go to the podium.

13            MR. FISHMAN:  Good afternoon, your Honor.

14            This is an action brought under the Fair Credit

15   Reporting Act, 15 U.S.C. 1681 and specifically 1681(E)(B) which

16   is the requirement that credit reporting agencies when they

17   prepare a credit report and that they have reasonable

18   procedures to assure maximum possible accuracy.  That is the

19   standard that the act sets out.  This action is brought under

20   1681(N) which claims that the violation of (E)(B) was willful.

21   Plaintiffs in these cases and FCRA cases have the option of

22   suing under 1681(O) which is for a neglect violation or 1681(N)

23   for a willful violation or both.  And the standard --

24            THE COURT:  What have you done?

25            MR. FISHMAN:  We've sued under "N" and we are alleging
```

1    a willful violation of the statute.

2            THE COURT:  So if I find there is no willfulness,

3    you're out.

4            MR. FISHMAN:  If at the end of the merits

5    determination, if you determine there is no willfulness, you're

6    correct.  There is no lawsuit.  We only sought a willfulness

7    violation.

8            THE COURT:  What's the difference in the damages you

9    get?

10           MR. FISHMAN:  Under "O" a plaintiff can get actual

11   damages, whatever they can prove and that's it.  Under "N" they

12   can get actuals or statutory damages, if they don't have

13   actuals of a range of 100 to $1000.

14           THE COURT:  Supposing they have actual damages but a

15   small amount.  Are they confined then to actual damages?

16           MR. FISHMAN:  If that's all they can prove and they

17   seek to prove actual damages, they get actuals.  They get

18   statutories if they can't prove actuals.  So you don't need to

19   have actual damage to get the statutory damage if you show a

20   willful violation.

21           THE COURT:  This case is based on people being

22   deprived of an opportunity to find an apartment because of

23   wrong information being given out by the credit agency.

24   Everyone will be damaged.

25           MR. FISHMAN:  Everyone will have damage, actual

1    damage?

2            THE COURT:  Yes.

3            MR. FISHMAN:  Well, possibly.  But the difference

4    though, the significant difference and why this case is so

5    well-suited for class treatment is that the negligent claim in

6    actual damages requires an element of causation.  Causation is

7    only an element of the 1681(O) violation or claim not under

8    "N".  So there is no causation claim at all in this case.

9            THE COURT:  Why as a representative of a class are you

10   foregoing one of the remedies that is available to the class?

11           MR. FISHMAN:  Well, for one thing, as the cases have

12   held, actual damage class action cases are very, very difficult

13   to certify for one thing because there are so many individual

14   damage issues.

15           THE COURT:  So you are taking your interest as a

16   lawyer above the interest of your clients.

17           MR. FISHMAN:  No.  If the client has a minimal actual

18   damage claim or can't necessarily prove causation, doesn't mean

19   she doesn't have a lawsuit.  She can still sue under "N" and

20   not have to prove or not prove causation.  There is many

21   situations where a applicant for an apartment can't say

22   definitively that but for that report, I would have gotten the

23   apartment.  That's a negligence claim requirement.  It is not a

24   requirement in this case.

25           THE COURT:  My point, Mr. Fishman, is that willfulness

1   is hard to prove.

2              MR. FISHMAN:  It's harder.

3              THE COURT:  It's hard to prove generally.  It's hard

4   to prove.  And negligence is much easier to prove.

5              MR. FISHMAN:  The FCRA, your Honor, I disagree because

6   there are two more elements in a negligence claim that you

7   don't have in a willfulness claim.  Have you causation and

8   actual damage which you don't have in a willful claim.

9              And let's be clear, the standard that the Supreme

10  Court has set for willfulness is not intentional.

11             THE COURT:  Let that be so but still there's another

12  remedy that you are foregoing.

13             MR. FISHMAN:  I don't know that there's a requirement

14  that any plaintiff in a purported class has to avail himself of

15  every possible remedy that might be out there.  Sometimes if

16  you choose too many remedies that's grounds to not certify a

17  class at all.  So you wouldn't have a class if you elected more

18  remedies than would result in certification because of all the

19  individual issues.  So certainly any member of the class is

20  able to opt-out.  If they want to bring an actual damage claim,

21  they certainly can opt-out.  We're no where near that stage.

22  But for the purposes of where we are now, where we're seeking

23  certification on the claims that we have asserted, there is

24  really no reason why this plaintiff shouldn't be able to

25  proceed on a willfulness claim for statutory damage and

J7IAAFELC                    Conference

1   punitive damage for a willful violation, which as the Supreme

2   Court said is governed by a reckless disregard standard, not an

3   intentional standard.  It's not the same willfulness in common

4   law.  Under the statute it is a much lower level of conduct.

5   As a reckless disregard meaning that you're aware of the issue.

6   You are aware of the law's requirements and you recklessly

7   disregard your obligation to comply with it.

8              And in this case --

9              THE COURT:  You are complaining that these are

10  misleading because they don't have up-to-date information and

11  the updated information often cancels out what is alleged in

12  the court action.

13             MR. FISHMAN:  Well, misleading.  It's --

14             THE COURT:  But supposing the defendant says, well, I

15  did the best I could --

16             MR. FISHMAN:  That's a reasonableness question which

17  is a question for a jury to determine hearing all of the

18  evidence as to what they had --

19             THE COURT:  I understand but it negates willfulness.

20             MR. FISHMAN:  If their finding was that they acted

21  reasonably, yes, it would negate any necessary lawsuit if the

22  procedures were found to be reasonable, of course.  But we

23  believe that this case is unique in the sense that this

24  defendant was sued previously for the exact same thing.

25             In 2004 Mr. Lesser is and I brought a case called

1    White against First American Saferent.  They are the

2    predecessor of this defendant.  And in that case we alleged

3    virtually the exact same violation as we have here.  In

4    Mr. White's case he had been sued for nonpayment of rent and a

5    week later the case was he resolved and it never appeared any

6    further and it was dismissed.  Six years later the defendant

7    reported to a prospective landlord that Mr. White had been sued

8    in that case and the status field is identical to the one in

9    this case which said "case filed".

10           We litigated that case for three years.  Judge Kaplan

11   heard the case.  And it finally settled with a class-wide

12   settlement with a certified class and an injunction.  And they

13   agreed that they would report dispositions of these housing

14   court cases going forward.  And now in 2015 when our client,

15   when the plaintiff was the subject of a report we have the

16   exact same problem.  So if that's not willful --

17           THE COURT:  There's a violation of the previous order.

18           MR. FISHMAN:  No.  We are not seeking to implicate a

19   violation of the order.  We brought a new action.  The

20   injunction I believe was a three-year term.  And that expired I

21   believe in '09 or '10.  So we couldn't bring something to

22   enforce that order.

23           But the point of it, judge, was that they were well on

24   notice that this is a problem and that they have to report

25   dispositions of New York City housing court cases and they

1    don't.  And we found in 66 percent of the cases where they've

2    prepared a report in the two-year class period, there were 4600

3    reports that they prepared.  We went and reviewed the court

4    records and we found that in 66 percent of those instances

5    there was actually a disposition that occurred in the case, in

6    that housing court case prior to the time they issued a report

7    saying "case filed".

8         That I believe is more than enough to establish that

9    we've got uniformity.  We've got numerosity.  We've got all of

10   the element of Rule 23A in this case and we also meet the

11   adequacy and the superiority under 23(B)(3).

12        THE COURT:  All right.  Let me hear what Mr. St.

13   George says.  I'll come back to you if I need to.

14        MR. FISHMAN:  Thank you, judge.

15        MR. ST. GEORGE:  Good afternoon, your Honor.

16        THE COURT:  Afternoon.

17        MR. ST. GEORGE:  Your Honor, this is a case about our

18   procedures and you've heard nothing about them.  That is

19   because they varied and the relevant inquiry whether we

20   willfully violated the FCRA as to any particular class member

21   would vary depending on the circumstances of the record that

22   was reported, the time and how it was collected by Corelogic,

23   how it was updated thereafter, how was audited thereafter,

24   which entity collected it because there's a distinction in the

25   class period here of different entities that collected.  It was

J7IAAFELC                    Conference

1    initially Corelogic and then turned over to another vendor.

2    All of these facts would relevant to our defense.  All parties

3    agree that if an objective assessment are reasonableness.  And

4    like most reasonableness determinations this is not subject to

5    a categorical resolution divorced from the circumstances of the

6    individual records and reporting.

7           It's simply not something and to be clear the majority

8    of the cases to consider EV classes have rejected them finding

9    that this provision of a statute is not amenable class

10   treatment.  We cannot resolve all of these questions in one

11   fell swoop.

12          Let me give you a number of examples as to how

13   Corelogic would defend any particular case brought against it

14   for any particular class member and recognize as well, your

15   Honor, that if there are multiple records reported on a

16   particular report we would defend each one of them.  There is

17   no way this can be resolved in mass.

18          The first way that we would with defend this case is

19   we would look at when was the record collected versus the time

20   that it was reported?  Because that's material.  That could be

21   reasonable.  If there's a really short delta in that time

22   period then when we went to the public access terminal to

23   collect the record, if there's a short period of time that

24   elapses thereafter and the courts reported, well then, a jury

25   could well find that factor favoring reasonableness and that

J7IAAFELC                    Conference

1   happened here.

2           Ms. Feliciano's record was collected three weeks

3   before was reported.  That's it.  And that fact would vary for

4   every single class member.  There's no way that you could try

5   that issue in mass because you'd have to go into the metadata

6   for each of our reporting and figure out when was this

7   collected directly at the court house --

8           THE COURT:  There is an argument against willfulness

9   rather than an attack on commonality.

10          MR. ST. GEORGE:  It's an attack on commonality because

11  this issue would be non common.  You would have to look at each

12  specific class member's report in terms of when it was

13  collected versus when it was generated.

14          Let's talk about our procedures.  So the record shows

15  that Corelogic for each of those records after it collected it

16  directly at the courthouse, mindful, the same way they that

17  claim a class should be certified here.  This is all they've

18  done.  They've gone to the same public access terminals that we

19  use but somehow they claim that that's a rigorous procedure for

20  purposes of certification but it willfully violates the FCRA.

21          THE COURT:  I don't understand.

22          MR. ST. GEORGE:  It's a completely hypocritical

23  argument for them to make.

24          THE COURT:  I don't understand.

25          MR. ST. GEORGE:  Their class list that they proffered

J7IAAFELC                    Conference

1    to you, they sent two untrained researchers to the public

2    access terminals to look up cases that they had requested to

3    see in discovery and they wrote down what they saw.  They did

4    that in 2019 of course and they are trying to make

5    representations about what the terminal might have reflected

6    going back to 2015 because there is literally no evidence as to

7    what it reflected at the time that it collected it.

8            That's the same process Corelogic used.  Corelogic

9    sent its field researchers directly to the terminal.  How can

10   they get up and say that was a willful violation of the FCRA,

11   but use that same process to certify a class?  Let me tell you

12   about --

13           THE COURT:  This goes to whether or not there was

14   willfulness.

15           MR. ST. GEORGE:  No, because -- well, that

16   hypocritical point is whether or not they could even use this

17   same process to certify a class that they'll have to impugn at

18   trial.  They should be estopped from doing that.

19           THE COURT:  I don't understand the connection.

20           MR. ST. GEORGE:  OK.  Using the same process they've

21   proposed class lists to you.  Those class lists were generated

22   by going the New York City Public Access terminals, punching in

23   case numbers and writing town the information that's reflected

24   for the cases.  That is the same process that Corelogic used to

25   generate these underlying reports.  Now, that process would

1    vary when you get down to the actual reporting because you'd

2    have to determine, well, for instance when did we collect it

3    versus when did we report it?

4            Actually, our process is a lot stronger than the

5    process that they used as well too because we didn't just stop

6    when we collected a record.  Without a disposition, your Honor,

7    we went back every month for six months to see whether or not

8    that record then had a disposition associated with it.

9            So why is that relevant for class?  Well, for every

10   record that we reported that they proposed to have on their

11   class list, based on the date that it was collected versus the

12   time that it was reported Corelogic may have gone back one

13   month to see if there has been a disposition.  It may have gone

14   back two, three, four, five, six times.  That would vary for

15   every single record at issue here.  It is not something that's

16   amenable to class resolution.

17           and as the defense we'd be entitled to present

18   consistent with our due process.  You'd also have to look at

19   the records themselves which would be relevant.  Here for the

20   plaintiff for instance, by the time that Corelogic collected

21   the record it was nine months old.  Nine months old and it

22   didn't have a disposition, which is common.  Even plaintiff's

23   class risks reflect housing court cases that have gone on for

24   years without a disposition seeming abandoned by the parties.

25           Corelogic would be entitled to argue that viewing a

J7IAAFELC                    Conference

1    record at a public access terminal that is nine months old at

2    the time that it's reported is a material fact to determine the

3    reasonableness of reporting that record without a disposition.

4    We've submitted record evidence establishing that in historical

5    experience of our field researchers that these cases generally

6    went to disposition and are abandoned within six months.  But

7    the age of record at the time that it was reported, meaning how

8    old it was when it was collected and then reported, would again

9    vary for every single class member.

10            There's also a lot of failings of proof in this case,

11   your Honor, discovery that simply wasn't taken and it's far to

12   late to take a now.  So the liability theory that the

13   plaintiffs are advancing here is that Corelogic should have

14   somehow back stopped going directly to the public access

15   terminals at the courthouse.  So going to the courthouse itself

16   in viewing these records and collecting them that we should

17   have somehow back stopped this process with a data feed from

18   the Office of Court Administration.  That's their liability

19   theory.  But they didn't get the data feed.  It's never been

20   produced in this case.  Nobody has ever seen it.  So to even

21   try their liability theory you would have to see whether or not

22   the record was even in the OCA data feed for purposes of then

23   supplementing our activity.  But there's no record of what the

24   OCA data feed would then reflect.

25            You can't get to trial on a class basis because they

J7IAAFELC                    Conference

1    don't have the data.  And even if they did have the data, you'd

2    have to look at every single version of that electronic data

3    feed to see whether or not it was even possible to supplement

4    any data being reported by Corelogic.

5            So you have blearing issues of proof.  There's also

6    multiple vendors involved during this time period.  Corelogic

7    started reporting these records -- the class here, your Honor,

8    goes back to 2015.  That's the proposed class period.  And from

9    2015 beforehand until 2017 Corelogic was sending its own field

10   researchers to the public access terminals.

11           In 2017 there's a switch.  They start using

12   LexisNexis.  LexisNexis in turn has its own subcontractor that

13   use called NYE that's going and collecting the records for

14   LexisNexis.  There is no discovered at NYE.  They didn't take

15   it.  So you've got class members that implicate a vendor that

16   they've taken no discovery of in this entire case and whose

17   procedures with respect to the little discovery they did

18   conduct with LexisNexis had been shown to vary from the

19   procedures of Corelogic.

20           There not even continuity in terms of practices,

21   vendors, et cetera and they simply didn't take any discovery.

22   They tried, your Honor.  They moved to reopen discovery after

23   class certification briefing closed but your Honor denied that

24   motion for lack of diligence in terms of discovering any

25   information further from LexisNexis and NYE.

1          The other thing I want to mention too, your Honor,

2     talking about how this case would be tried.  So you've got the

3     differences and the collection date versus reporting dates.

4     You've got the differences and age of the records at the time

5     that their collected and reported.  You've got the differences

6     in terms of how many update cycles were applied to each record.

7     You've also got audits that are conducted by Corelogic of

8     records.  Meaning that every month Corelogic would also

9     generate a random list of cases and send out a supervisor to go

10    view that record again at the public access terminal to see

11    whether or not it had been accurately keyed into its system.

12         So again, we'd be able to test for any particular

13    class member that they proposed whether that class member's

14    record was audited.  None of this is capable of class-wide

15    resolution, let alone the distinctions between the vendors that

16    simply weren't just discovered in this case.

17         There's also really systemic problems with the class

18    lists themselves, your Honor, that have been proposed to you

19    today.  So those class lists which were attached, proposed

20    class lists are attached as Exhibit 29 and 30 to the motion for

21    a class certification.  And basically, they delineate their two

22    lay witnesses that they hired in the middle of this litigation

23    to go to public access terminals and write down information

24    about cases.  So we've already identified errors in their data

25    transcription and we've presented those in our opposition

1    briefs.  We've tested just a small sample of what they

2    collected.  It was not possible during the time period we had

3    for our opposition to try and run down all the records.  So we

4    tested about 200 and found errors in a number of them.  We

5    presented some of those to the Court.

6         But there's also really other systemic issues with the

7    class list.  So their class definition, your Honor, depends on

8    a specific type of disposition being that was apparently in the

9    underlying paper file but that we didn't report.  So in order

10   to be a class member under the class definition proposed

11   amended complaint you have to have had a judgment or a case

12   that was reported without a disposition by Corelogic where in

13   fact despite apparently no showing up on the public access

14   terminal, that there had been a disposition of a

15   discontinuance, a withdrawal or a dismissal.  That's it.  It's

16   those three.

17        The class lists make no distinction among types of

18   dispositions.  There's no record as to the class members that

19   would even meet their own class definition.  All they've done

20   for you is to go to the public access terminal and to see

21   whether or not they apparently found a disposition.  But that's

22   not the class.  That type of disposition could be judgment in

23   favor of the landlord.  But that's not their class.  Their

24   class is limited to specific types of disposition and they

25   aren't a part of the record and apparently that they never

1   sought a discovery.

2           But wait.  There's even more problems with their class

3   lists.  So just last Friday I was produced documents for the

4   fist time.  Six months after close of discovery I get an e-mail

5   from Mr. Fishman's firm that attaches some PDF documents and

6   Excel spreadsheets.  Again, I don't know why they were produced

7   for the first time last Friday.  But they showed something

8   pretty interesting.  They showed that their field researchers

9   if a case was listed as inactive meaning it wasn't active in

10  the court system any more, they viewed that as a disposition.

11  So those people are a part of their class.  And that's a big

12  problem because that's not a disposition.  Inactivity of an

13  underlying court record is not a disposition.  It's not a

14  dismissal.  It's not a discontinuance. it's not a withdrawal.

15  In fact, it's not anything.  It's not a disposition.  So that

16  late document production showed some serious errors.

17          You could see that for instance with respect to the

18  named plaintiffs.  OK?  So if you take the named plaintiff's

19  record.  It shows up on Exhibit 29.  It's a lengthy

20  spreadsheet.  You go down to row 862, that's Ms. Feliciano.  It

21  doesn't say her by name but it's got her case number.  So it's

22  the case that she is challenging, the one that she says makes

23  her an adequate and typical as representative class.  If you

24  scroll over to the side it says there's a disposition of

25  May 29, 2015.  But that's not true.

J7IAAFELC                    Conference

1          If you look at the actual screen shot of the court

2    terminal that they presented for you at Exhibit 28 to their

3    motion for class certification it just says it's inactive.

4    It's an inactive case.  So the named plaintiff using the

5    process that they described that they propose for class

6    certification does not even meet the standard of the class

7    definition.  Because her case is apparently inactive on the

8    public access terminal.  It's not dismissed.  It's not

9    withdrawn.  It's not discontinued.

10         And this is a huge problem not just for Ms.~ Feliciano

11   because the proof they presented to the class or to you for her

12   does not even meet the class definition that they proposed.

13   The public access terminal doesn't show a dismissal or

14   discontinuance or a withdrawal for her.  It shows inactivity.

15         What does it show inactivity for?  Conversion.  And

16   that's because the systems and the public access terminals were

17   being converted at this time.  This is a huge and systemic

18   problem where they've apparently taken the code of inactive and

19   marked that as a disposition for untold numbers of class

20   members.  Again, we don't have any idea in the record as to how

21   many people --

22         THE COURT:  I think I've got your position.

23         MR. ST. GEORGE:  OK.  There's two other big picture

24   issues here as well that are issue for purposes for class

25   certification.  So all those issues are how would the case

1    possibly be tried on a class-wide basis.  Two other issues

2    here.

3            The first as I mentioned is they haven't actually

4    presented any proof of the class.  The spreadsheets are --

5            THE COURT:  Say that again.

6            MR. ST. GEORGE:  The spreadsheets that they've given

7    you, Exhibits 29 and 30 they say they're the class, that's

8    their proposed class list, they just reflect whether or not

9    there's been a disposition.  OK?  But their class definition

10   requires it to have been a specific type of class.  It has to

11   be a discontinuance or a withdrawal or dismissal.  So you don't

12   actually any proof of anyone that meets their own class

13   definition according to their own record evidence that they've

14   built for you today.

15           The other issue here is they went and gathered this

16   information in 2019.  So they sent their field researchers to

17   the terminals that they hired at the very end of discovery

18   period, never disclosed to us.  So they send these people and

19   they finish up their work apparently in 2019 and they are

20   looking at public access terminals.  Whereas, Corelogic was

21   looking at the same public access terminals all the way back to

22   2019 which is when his class period starts.  And they say

23   uh-huh, there's a disposition of the public access terminal in

24   2019.  Therefore, there is an inaccuracy and we can prove that

25   one of multiple elements of our claim.  But there is no

1    correlation between what was shown on the public access

2    terminal in 2015.  These public access terminals of course are

3    subject to change by the courts and there's no evidence they

4    took no discovery of the court system at all.  They did not

5    depose a single representative.

6              THE COURT:  I think you've made these points already.

7              MR. ST. GEORGE:  So all I'm saying to finish up, your

8    Honor, is that what they've presented to you as evidence of an

9    inaccuracy with the public access terminal isn't evidence of

10   what the public access terminal showed in 2015, 2016, 2017,

11   2018 and is there no evidence as what the terminal showed.

12             THE COURT:  I believe that the defendant's argument

13   against certification is an argument that the merits of the

14   case can't be won by the plaintiff.  That's premature at this

15   point.  I think the requirements of Rule 23 are satisfied.

16             There is numerosity I think if I accept the definition

17   of commonality and person jurisdiction, standing, there's

18   typicality, class representatives are adequate and the class

19   issues I believe predominate over the individual issues.  The

20   class members are ascertainable although there seems to be some

21   dispute as to who they are and I think all these criteria of

22   Rule 11 is met.  We'll write our order in a few days and issue

23   it.

24             All right.  So let me ask you this, Mr. Fishman,

25   assuming you get such favorable order, what's the next step?

J7IAAFELC                    Conference

1          MR. FISHMAN:  Well, your Honor, what remains

2    outstanding is we have yet to do any expert discovery.

3          THE COURT:  What are you going to do about mailing the

4    notice?

5          MR. FISHMAN:  Well, we need the names from the

6    defendant.  They haven't given that to us.  They have the names

7    from their spreadsheet.  We had originally asked for the actual

8    reports then he had refused.

9          THE COURT:  So they've given you the names?

10         MR. FISHMAN:  The names and the last known address.

11         THE COURT:  OK.  How many are there?

12         MR. FISHMAN:  2600.

13         THE COURT:  All right.  So you are going to mail it to

14   them?

15         MR. FISHMAN:  Yes, we would do a mailing.

16         THE COURT:  Are you going to do a form notice?

17         MR. FISHMAN:  Yes.

18         THE COURT:  Is that the next step?

19         MR. FISHMAN:  Well, in that process, yes, but the

20   class purposes, yes, for the litigation.

21         THE COURT:  When are you going to issue the notice to

22   the class?

23         MR. FISHMAN:  Whenever your Honor tells us we'll do

24   it.

25         THE COURT:  Soon?

1          MR. FISHMAN:  60 days.

2          THE COURT:  OK.  So the next procedure is to submit to

3     me a form of class notice after clearing it with defendant and

4     ask me to sign it and that will be the next step.

5          MR. FISHMAN:  OK.

6          THE COURT:  And then the class will be identified

7     according to opt-outs.

8          How about the litigation itself?

9          MR. FISHMAN:  Well, as I said, your Honor, we have yet

10    to do the expert discovery.  That was put aside.

11         THE COURT:  What's the expert discovery going to tell

12    us?

13         MR. FISHMAN:  Well, we have an expert, likely, we'll

14    have two experts.  One on the New York City Housing Court

15    system which is the expert that was certified by Judge

16    Engelmayer in the Winning case, as well as by Judge Kaplan in

17    the White case.  And also an expert on the computer systems

18    itself because one of things we're alleging here is that they

19    had this electronic data feed.

20         THE COURT:  Apart from the two experts, what else do

21    we need before you are ready for trial?

22         MR. FISHMAN:  I assume there is going to be a

23    dispositive motion on other either side but --

24         THE COURT:  Have you finished your depositions?

25         MR. FISHMAN:  We did all the deposition of the fact

 1    witnesses.  The last two were done this week of the people that

 2    had done our spreadsheets.

 3              THE COURT:  Mr. St. George, are you planning to have a

 4    motion for summary judgment?

 5              MR. ST. GEORGE:  Most likely, your Honor, yes.

 6              THE COURT:  You are not sure?

 7              MR. ST. GEORGE:  I would suspect that we would.

 8              THE COURT:  And is it necessary to have the expert

 9    discovery before you make your motion?

10              MR. ST. GEORGE:  Most likely, your Honor, yes.

11              THE COURT:  So you've got to go to go ahead with your

12    expert discovery.  Are you going to have any experts?

13              MR. ST. GEORGE:  Most likely, yes.  We would entertain

14    probably having an expert.  First of all, there would have been

15    to be an opportunity for rebuttal of whatever experts.

16              THE COURT:  It would be two rounds and I'd like you to

17    discuss the two rounds and give me an order that establishes

18    the dates.

19              MR. FISHMAN:  Do you want us to submit that to you?

20    We'll talk amongst ourselves and get you an order.

21              THE COURT:  Right.

22              MR. FISHMAN:  Your Honor, I --

23              THE COURT:  The dates will be binding.  No

24    adjournments.

25              MR. ST. GEORGE:  Your Honor, I also anticipate there

J7IAAFELC                      Conference

1    will at least for a motion for Rule 23(F) appeal if you

2    certified a class.  Obviously, that could delay proceedings as

3    well.

4              THE COURT:  Who decides that?

5              MR. ST. GEORGE:  The motion will be presented to the

6    Second Circuit.  It's an interlocutory appeal as a matter of

7    right.  They have the discretion of whether or not to hear it.

8    First of all, I think we'll need to see your order.  There may

9    a basis for reconsideration of your order.

10             THE COURT:  Don't make a motion.  Take it up with the

11   Second Circuit.

12             MR. ST. GEORGE:  Well, I even think there's

13   fundamental issues that aren't being addressed here.  The case

14   can't be tried as a class but who would be in the class?  Are

15   these inactive individuals, for instance, class members.  We

16   don't have any class debt.  We don't know who is dismissed,

17   discontinued or withdrawn or who are we sending the notice to.

18   There is no record of that.

19             THE COURT:  Mr. Fishman, who is getting the notice?

20             MR. FISHMAN:  The 2600 people that we identified.

21             MR. ST. GEORGE:  But they are a not class members.

22             THE COURT:  Don't argue with each other.

23             MR. FISHMAN:  The 2600 people that we've identified

24   who are the subject of a report where a disposition occurred

25   prior to the time the report was issued.

J7IAAFELC                     Conference

1            THE COURT:  That's the class, isn't it?

2            MR. ST. GEORGE:  That's not the class.

3            THE COURT:  That's the class, isn't it?

4            MR. ST. GEORGE:  That's not the class.  The class is

5    those individuals -- so you can have people getting a class

6    notice where the judgment was in favor of the landlord.  This

7    is not possible that these people could have suffered any harm.

8            THE COURT:  We could work that out as we --

9            MR. FISHMAN:  Judge, I think it's a simple solution

10   here.

11           THE COURT:  We've got the solution.  You've got the

12   2600 members.

13           MR. FISHMAN:  That's the solution.

14           MR. ST. GEORGE:  But those aren't the class members.

15           THE COURT:  I've heard enough.  All right.  So we'll

16   issue the order.  The defendant will probably file an appeal

17   but during that appeal I want you to do your expert discovery.

18   I would like a submission by Wednesday.  Give me the dates for

19   the experts' discovery.

20           MR. FISHMAN:  The 24th, I believe.

21           MR. LESSER:  If I may, your Honor, I've discovered

22   over the years that judges have different views on length of

23   opt-out period.

24           THE COURT:  I don't have any particular views.

25           MR. LESSER:  We'll suggest something.

J7IAAFELC                    Conference

1          THE COURT:  Work it out together.

2          MR. LESSER:  Thank you.

3          So we can't send out the class notice until the appeal

4   is exhausted.

5          MR. FISHMAN:  I don't know what the timeframe is for

6   them to even take an appeal.

7          THE COURT:  I think the Second Circuit if it takes the

8   matter would like to see a notice, a proposed notice.  So work

9   that out.  You're going to move ahead on the numbers and move

10  to settle the notice.  The defendant's going to move to the

11  Second Circuit to see if he can file an appeal.  You are going

12  to give me a set of dates for your expert discovery and we'll

13  finish all discovery in the case, right?

14         MR. FISHMAN:  That should do it.

15         THE COURT:  Right?

16         MR. ST. GEORGE:  Yes, your Honor.

17         MR. FISHMAN:  By the 24th you want the names of the

18  experts and the schedule?

19         MR. ST. GEORGE:  I think that's the schedule.

20         THE COURT:  It's a schedule.  And one of the dates

21  will be when you identify your expert when you give me your

22  report.  I want this to move forward until a time when you are

23  finished so I can have a status conference with you after

24  you've finished all of these proceedings and decided where to

25  go.

1          If there is an appeal and the Second Circuit makes the

2     determination about that, then we'll know where we are in

3     trying the case.

4          OK.  Did I cover everything?

5          MR. FISHMAN:  I believe so, judge.

6          MR. ST. GEORGE:  My only question is again, relates to

7     the class notice.  Who is the class at this point?

8          THE COURT:  The 2600 people.

9          MR. ST. GEORGE:  OK.

10         THE COURT:  OK.  Folks, thanks.

11         (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25