UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x          Case No. 17-CV-05507 (AKH)
CLAUDINNE FELICIANO,
Individually and on behalf of all others
similarly situated,

                    Plaintiff,

            -against-

CORELOGIC SAFERENT, LLC,
a/k/a CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC,

                 Defendant.
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DR. RAISA BAHCHIEVA

Seth R. Lesser
Jeffrey A. Klafter
Alexis H. Castillo
KLAFTER OLSEN & LESSER LLP
Two International Drive Suite 350
Rye Brook, New York 10573

James B. Fishman
FISHMANLAW, PC
400 Madison Avenue, 19th Floor
New York, New York 10017

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................... 1

PERTINENT FACTS AND PROCEDURAL HISTORY ........................... 1

    A.    Plaintiff's Expert Report ......................................... 2

    B.    Defendant's Expert Report and The Expert Deposition of Dr. Bahchieva ............ 2

        1.    *Dr. Bahchieva Has No Expertise or Relevant Experience Regarding New York City Housing Court Eviction Cases or Data and Has Failed to Validate Key Bases for Her Opinions* ......................................... 3

        2.    *Dr. Bahchieva Has Not Employed Any Economic Analysis in Opining that CoreLogic's Six Month Limitation for Looking for Case Dispositions Is Reasonable and Appropriate* ................................. 7

ARGUMENT ................................................................ 9

    I.    Dr. Bahchieva's Report Fails to Meet the Reliability Standards Established By *Daubert* and Its Progeny .................................... 10

        A.    Dr. Bahchieva Lacks Scientific, Technical, or Other Specialized Knowledge That Will Help the Trier of Fact to Understand the Evidence or to Determine a Fact at Issue ............................. 11

        B.    Dr. Bahchieva's Opinions Are Not the Product of Reliable Principles and Methods or the Application of any Reliable Principles and Methods to the Facts of This Case .................................. 12

CONCLUSION ............................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Amorgianos v. Amtrak,*
   303 F.3d 256 (2d Cir. 2002) .......................................................................... 10, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
   509 U.S. 579 (1993) ........................................................................... *passim*

*Davidov v. Louisville Ladder Group, LLC,*
   2005 U.S. Dist. LEXIS 3117 (S.D.N.Y. Mar. 1, 2005) .......................................... 13

*GE v. Joiner,*
   522 U.S. 136 (1997) .......................................................................... 10, 11

*Heller v. Shaw Indus., Inc.,*
   167 F.3d 146 (3d Cir. 1999) .......................................................................... 12

*Hill v. Quigley,*
   336 F. Supp. 3d 283 (S.D.N.Y. 2018) (Hellerstein, J.) .................................... 12, 13

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) .......................................................................... 9, 12

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,*
   209 F. Supp. 3d 612 (S.D.N.Y. 2016) ...................................................... 14

*Macaluso v. Herman Miller, Inc.,*
   2005 U.S. Dist. LEXIS 3717 (S.D.N.Y. Mar. 10, 2005) ...................................... 11

*Nora Bevs., Inc. v. Perrier Group of Am. Inc.,*
   164 F.3d 736 (2d Cir. 1998) ........................................................... 11, 12

*Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.,*
   2001 U.S. Dist. LEXIS 20737 (S.D.N.Y. Dec. 13, 2001) ...................................... 13

*United States v. Williams,*
   506 F.3d 151 (2d Cir. 2007) .......................................................................... 9

*Zaremba v. GMC,*
   360 F.3d 355 (2d Cir. 2004) ........................................................... 11, 12


**Rules, Statutes and Other Regulations**

Fed. R. Civ. P. 702 ........................................................................... *passim*

Fed. R. Evid. 401 .......................................................................... 10

Fed. R. Evid. 403 ..........................................................................12

## PRELIMINARY STATEMENT

Defendant CoreLogic Saferent LLC ("CoreLogic") relies on the expert report and deposition testimony of Dr. Raisa Bahchieva to rebut the conclusions reached by Plaintiff's expert, Andrew Scherer, who opined on the inadequacy of CoreLogic's procedures used to collect New York City Housing Court eviction data that was used to create credit reports on Plaintiff and the members of the Class.  But Dr. Bahchieva has admitted that the foundation of her report – that CoreLogic's processes for collecting Housing Court eviction data was "reasonable and consistent with quality standards and best practice for data collection" – is premised on (i) an unprincipled conclusion that only looking for dispositions of cases for six months after their filing is reasonable; and (ii) her blind acceptance of facts provided by CoreLogic, which are demonstrably false.  Dr. Bahchieva's report is also devoid of expert analysis, and her opinions concerning the adequacy of CoreLogic's data collection efforts are not based on any of her prior experience.  Accordingly, Dr. Bahchieva's report and testimony fail to meet the reliability standards required for admissibility in this case, as established by Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993) and its progeny, and should be excluded in their entirety.

## PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff commenced this action on July 19, 2017 alleging that CoreLogic willfully failed to accurately and completely report the disposition of New York Housing Court cases to prospective landlords in violation of FCRA § 1681e(b), which requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  ECF Nos. 1, 10.

On July 29, 2019, this Court granted class certification for those individuals who, within two years prior to the commencement of this action (1) were the subject of a credit report prepared by CoreLogic; (2) prior to the issuance of the credit report were a party in a Housing Court proceeding filed in a New York State court, which had a disposition of dismissed, discontinued or withdrawn; and (3) the credit report CoreLogic issued on behalf of those individuals referenced the Housing Court proceeding but failed to include such disposition. ECF No. 89. The Court-approved Notice was issued via first class mail on March 20, 2020 to the 1,927 individuals in the class. The Court scheduled a pre-trial conference on September 9, 2020, and this case is currently scheduled to go to trial on September 14, 2020. *Id.*

### A.     <u>Plaintiff's Expert Report</u>

On November 11, 2019, Plaintiff served the expert report of Andrew Scherer on Defendant. Mr. Scherer rendered his opinion on two issues: (i) whether the credit reports CoreLogic generated about plaintiff and class members for prospective landlords during the two-year period prior to the commencement of the class action fell below the standard of "maximum possible accuracy" required under the FCRA; and (ii) whether CoreLogic, in generating these reports, maintained and used "reasonable procedures to assure maximum possible accuracy of the information concerning the individuals about whom the reports related." He concluded that CoreLogic was deficient on both issues.

### B.     <u>Defendant's Expert Report and The Expert Deposition of Dr. Bahchieva</u>

CoreLogic served Dr. Bahchieva's rebuttal expert report on February 4, 2020. CoreLogic asked Dr. Bahchieva "to give [her] opinion in response to the expert report prepared by Andrew Scherer, including his assessment of the quality of New York City housing court eviction data collected and used for the credit reports generated by the defendant RPS." Ex. A (Expert Report

of Dr. Raisa Bahchieva).[1]  Dr. Bahchieva ultimately concluded that CoreLogic's "practices for administrative data collection and updating at the New York City housing court public access terminals were reasonable and consistent with quality standards and best practices for such data collection."  *Id.* at 15.

Plaintiff took Dr. Bahchieva's deposition on March 13, 2020.  As detailed below, Dr. Bahchieva's lengthy deposition unequivocally reveals that she (i) has no expertise or relevant experience pertaining to eviction proceedings in the New York Housing Court; (ii) applied no accepted economic methodology, or any other analysis, to opine that CoreLogic's six-month window following a case filing for looking for dispositions is reasonable and appropriate; and (iii) blindly accepted demonstrably inaccurate "facts" provided by CoreLogic crucial to her opinion, failing to validate them with the rigor appropriate for any expert.

       **1.**       ***Dr. Bahchieva Has No Expertise or Relevant Experience Regarding New York City Housing Court Eviction Cases or Data and Has Failed to Validate Key Bases for Her Opinions***

Dr. Bahchieva conceded during her deposition that she has no expertise regarding New York City eviction cases (Tr. 70:16-20), the data generated by the Housing Court concerning those cases (*id.* 56:4-12; 63:18-25), or the procedures for obtaining such data (*id.* 107:6-24; 114:14-115:4).  She also testified that she has no experience reviewing New York City Housing Court data of the kind about which this case relates:

- Q.  . . . But none of that prior experience involved looking at, working with, or understanding cases -- data pertaining to cases filed in the housing court in which landlords seek to evict tenants; is that right? A. That's correct.  (Tr. 55:17-23)

---

[1] All exhibits referenced herein are annexed to the Declaration of James Fishman ("Fishman Declaration"), submitted simultaneously herewith.  The transcript of Dr. Bahchieva's deposition is attached as Exhibit B to the Fishman Declaration and is referenced herein as "Tr.".

- Q. So is it fair to say that prior to this project, you had never done anything like this before? A. Like what? What do you mean? Q. Looking at housing court data specifically about lawsuits filed by landlords against tenants seeking to evict them from their homes. A. Correct.  (Tr. 56:4-12)

- Q. Do you have any experience, let alone vast experience, with looking at housing -- New York City housing court eviction case data? A. No, I don't.  (Tr. 70:16-20)[2]

Nor does she have or obtain any personal knowledge of the available procedures for obtaining such data which are integral to her opinion that the procedures employed by CoreLogic were adequate.  Instead, Dr. Bahchieva's opinions are based on self-serving testimony of CoreLogic witnesses that she failed to validate and which are in fact false.  For example, her opinion that CoreLogic's efforts to obtain Housing Court data were constrained by a limited number of public access terminals (Ex. A at 6) was based in part on her belief that Housing Court data for one New York City county can only be obtained by going to the terminals available in that county:

Q. Okay. If somebody were to access the terminal in Manhattan --

A. Right.

Q. -- could they obtain court records pertaining to eviction cases filed in Queens?

A. My understanding, they could not.

Q. Okay. And what about Brooklyn? Again, sitting at the terminal in Manhattan.

---

[2]  Dr. Bahchieva went on to testify that "I don't see why quality of housing court eviction data would be different from the quality of other court data or other administrative data" (Tr. 70:20-24) but admitted that she just assumed that "based on her experience and knowledge" (Tr. 71:5-6), none of which she ultimately admitted concerned Housing Court data.  *See* Tr. 68:18-69:13.  And she admitted that she did nothing to verify the accuracy of Housing Court data that she opined was of "high quality".  *See* Tr. 72:23-73:3.  Further, even if the Housing Court data was of "high quality", this is irrelevant to whether CoreLogic's collection methods satisfied the requirements of the FCRA.

A. My understanding, they could not.

Tr. 111:8-20.  But Dr. Bahchieva later acknowledged that she was wrong.  *Id.* at 259:3-21.  Dr. Bahchieva also did not even find out how many public access terminals CoreLogic could have accessed.  *See id.* 107:6-15.

Similarly, Dr. Bahchieva's opinion was also premised on her belief that CoreLogic tried to obtain access to paper court records but was denied access by the clerks, writing in her report, "county clerks generally refused to make available paper copies of records, meaning that they could not be used in conjunction with the public access terminals."  Ex. A at 6.  This unverified belief was also wrong, as shown by the very Housing Court requisition form which is used to get paper records.  *See* Ex. D (Bahchieva Tr. Ex. 7).[3]  And so, too, was her belief that, as stated in her report, CoreLogic was not allowed to take screenshots of the information on the terminals, which would have sped up its data collection (Ex. A at 6), as was demonstrated at her deposition by a photograph of a person at a public access terminal in Manhattan Housing Court using cell phone to photograph the screen.  Ex. C (Bahchieva Tr. Ex. 6).  Additionally, Dr. Bahchieva claimed in her report that offsite archiving of paper records was also an obstacle CoreLogic faced (Ex. A at 6) even though she did not know the time frame for when the Housing Court archived paper records -- which was, in fact, after three years.  *See* Tr. 266:17-25.

Dr. Bahchieva also opined that CoreLogic's efforts to obtain data from the Housing Court public terminals was reasonable because, in significant part, she is "not aware of any more reliable source of administrative data on housing court proceedings than the housing court public access terminals."  Ex. A at 9.  Here, again, she was wrong because she was wholly ignorant of

---

[3] When confronted with Ex. 7, Dr. Bahchieva backtracked and claimed she was referring to "bulk requests" in her report but acknowledged she did not know of any limitations on the number of such requests that could be made.  Tr. 274:10-275:9.

the fact that CoreLogic for years had access to, and indeed purchased, an electronic data stream it received directly from the Court on a daily basis which would have allowed it to avoid or limit the need to obtain Housing Court data from the Housing Court public access terminals.  *See* Tr. 297:9-299:8; Tr. 299:16-300:14 (agreeing it would be more reasonable to use the electronic data feed).

The reason Dr. Bahchieva based her opinions on so many erroneous facts and assumptions is that she has no specialized knowledge or expertise regarding New York City Housing Court data or cases and failed to independently verify any of the testimony or other information provided to her by CoreLogic, as any economic or other expert would do.  She just "blindly accepted" such information even though she could have easily learned it was wrong by asking Peter Catella of the New York County Housing Court Clerk's Office during her conversation with him to "double check this particular record [the Plaintiff's record], the accuracy of it" (Tr. 95:17-96:22) or by making a subsequent call to him to verify the accuracy of her other beliefs.  In fact, information concerning the Plaintiff's record was all Dr. Bahchieva ever confirmed:

- Q. You blindly accepted it [that CoreLogic's employees couldn't take cellphone screenshots] without --A. Yes. Q. -- without -- A. Yes. Q. -- any challenge; correct? A. Correct.  (Tr. 257:14-20)

- Q. Okay. Again, that [off-site archiving of Housing Court paper files was an issue faced by CoreLogic] was something you blindly accepted from the CoreLogic testimony; correct? A. Correct.  (Tr. 267:2-7)

As a result, Dr. Bahchieva's opinions concerning the reasonableness of CoreLogic's efforts to obtain accurate and timely Housing Court data are devoid of any expert or specialized

knowledge and represent nothing more than a parroting of the self-serving testimony of

CoreLogic's employees.[4]  As discussed below, such baseless non-expert opinions do not meet

the tests for the admission of expert testimony at trial.

**2.** ***Dr. Bahchieva Has Not Employed Any Economic Analysis in Opining***
***that CoreLogic's Six Month Limitation for Looking for Case***
***Dispositions Is Reasonable and Appropriate***

Dr. Bahchieva's opinion concerning the reasonableness of CoreLogic's policy to only

look for case dispositions for six months after a case filing is also devoid of any analysis or

factual basis.  Dr. Bahchieva opined in her report that "[t]he six-month period was chosen as a

reasonable time limit because, in the experience of RPS's [CoreLogic's] field researchers and

supervisors, housing court cases would typically move through litigation and arrive at a

disposition within that six-month period."  Ex. A at 7.  During her deposition, she testified that

her rational for endorsing that six-month policy was as follows:  "And a six-month period seems

to be a reasonable timeframe. And I think in an ideal world, we would want complete

information, but we are not in -- so given the amount of resources they have, they have to stop

---

[4] It is worth noting that in yet other respects to those specifically discussed above and *infra*, Dr.
Bahchieva's report is grounded on unsupported or unsupportable premises.  For instance, aside from
relying upon the self-serving testimony of CoreLogic's employees, a 2016 research study she cites, Ex. A
at 4, n.2, was actually a "self-sourced" marketing document from TransUnion, another credit reporting
agency justifying its own procedures (Tr. 153:6-156:16) that she conceded "probably needed
verification."  *Id.* 164: 4-10.  Likewise, Dr. Bahchieva just assumed that the data collected and used by
CoreLogic for reporting is of "high quality", and accordingly current, because Housing Court proceedings
are "highly regulated," a view based on a statute provided by counsel, Ex. A at 9 n.7, of which she only
"read portions" and failed to "independent[ly] . . . confirm whether or not th[e] statute . . . has any
relationship to [] housing court eviction case data."  Tr. 74:24-76:10.  In other words, she assumed that
the data is of "high quality" because it is supposedly highly regulated, based on a statute she was given by
defense counsel that she did not read, did not independently confirm, and did not know if it was even
applicable to this case. Indeed, in concluding that CoreLogic's collection of data from public access
terminals was reasonable, she did not even consider data from New York City Housing Court at all, but
instead referred to bankruptcy court data and records of home purchases.  Ex. A at 9 n.9; Tr. 68:18-69:13;
64:5-16.

somewhere." Tr. 216:21-217:2.  Dr. Bahchieva's opinion on CoreLogic's six-month policy is therefore not based on any analysis, let alone expert analysis.

In his report, Plaintiff's expert, Mr. Scherer, who has extensive first-hand knowledge concerning the litigation of eviction cases in the Housing Court as well as decisions rendered by that Court which bear on the longevity of cases, stated "it is clear from my knowledge of New York housing law, and familiarity with New York City Housing Court practice, that a <u>great many</u> of the court's cases do in fact take more than six months to arrive at a final disposition." Ex. E (Scherer Report) at 21 (emphasis added).  He went on to explain that this is the case due to discovery, motion practice and that there are often multiple dispositions as default judgments are typically vacated when a tenant raises an issue of inadequate notice.  *Id.*

In contrast to Mr. Scherer's factually-based statements based on his specialized knowledge of and expertise regarding the Housing Court, Dr. Bahchieva has no specialized knowledge permitting her, nor conducted no analysis, empirical or otherwise, to determine if CoreLogic's six-month policy is actually supported by the timing of most of the actual dispositions, nor did she seek to determine the percentage of cases that had multiple dispositions:

- Q. Okay. But you don't know one way or the other what that [cases with multiple dispositions] is. A. I don't know. Q. And you didn't see anything in the materials you were provided that answered that for you. A. No.  (Tr. 222:17-25)

Nor is there any evidence that Dr. Bahchieva ever determined or evaluated what information CoreLogic specifically relied on in setting its six-month rule, when the rule was established and the extent it was revisited:

- Q. So this [that the number of multiple dispositions is relatively small] is all assumptions on your part. A. Correct.  (Tr. 223:2-4)

8

Blindly accepting CoreLogic's belief that its six-month rule is reasonable and simply making that belief her opinion without conducting any analysis or even reviewing CoreLogic's analysis, is not the type of opinion that can withstand the requirements of *Daubert*.

**ARGUMENT**

Federal Rules of Evidence Rule 702, which governs the admissibility of expert testimony, states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

While the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, the district court is the ultimate "gatekeeper." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal citation omitted) (citing, *inter alia*, Fed. R. Evid. 104(a)). As the gatekeeper, the District Court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 597 (1993). As part of its gatekeeping function, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Moreover, the District Court need not "admit opinion evidence that is connected to existing data only by the

*ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  *GE v. Joiner*, 522 U.S. 136, 146 (1997).

"In fulfilling this gatekeeping role, the trial court should look to the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, *i.e.*, whether it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Amorgianos v. Amtrak*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting Fed. R. Evid. 401).  "In this inquiry, the district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony "is the product of reliable principles and methods"; and (3) that "the witness has applied the principles and methods reliably to the facts of the case."  *Amorgianos*, 303 F.3d at 266 (quoting Fed. R. Evid. 702).  The inquiry is "a flexible one" because the "overarching subject is the scientific validity – and thus the evidentiary relevance and reliability – of the principles that underlie a proposed submission."  *Daubert*, 509 U.S. at 594-595.

## I.     Dr. Bahchieva's Report Fails to Meet the Reliability Standards Established By *Daubert* and Its Progeny

CoreLogic cannot demonstrate, by a preponderance of the evidence, that the expert evidence it proffers satisfies the expert admissibility standards of Fed. R. Evid. 702.  As set forth below, Dr. Bahchieva lacks "scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue" and her report and testimony are not "the product of reliable principles and methods" or the application of any reliable principles and methods to the facts of the case.  *Amorgianos*, 303 F.3d at 266.

A.    **Dr. Bahchieva Lacks Scientific, Technical, or Other Specialized Knowledge That Will Help the Trier of Fact to Understand the Evidence or to Determine a Fact at Issue**

Despite Dr. Bahchieva's self-proclaimed expertise as a housing economist, Tr. 17:21-18:5, she has no experience with the New York City Housing Court system, the data generated by it or procedures for collecting that data.  Further, rather than relying on any scientific, technical or other specialized knowledge in rendering her opinions, she instead based her opinions on her simple reading of the testimony of CoreLogic witnesses and her blind acceptance of such testimony even though a cursory inquiry would have shown that the information was wrong.  *See* pp. 4-7, *supra*.  *See Macaluso v. Herman Miller, Inc.*, 2005 U.S. Dist. LEXIS 3717, at *23 (S.D.N.Y. Mar. 9, 2005) (concluding that expert's testimony must be excluded under *Daubert* "because it is based on incorrect factual assumptions that render all of his subsequent conclusions purely speculative").  Dr. Bahchieva's opinions boil down to a simple parroting of CoreLogic testimony.  *See Joiner*, 522 U.S. at 146 ("opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" need not be admitted, as there may be "too great an analytical gap between the data and the opinion proffered"); *Zaremba v. GMC*, 360 F.3d 355, 360 (2d Cir. 2004) ("In view of Phillips's meager qualifications to offer the opinions as to automobile design that these plaintiffs rely on, the District Court's *Daubert* analysis seems almost superfluous.") (citing *Nora Bevs., Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (upholding exclusion, under Fed. R. Evid. 702, of proffered expert who lacked relevant experience)).

Additionally, an expert who has no experience, no expertise, and no exposure to the New York City Housing Court system or its data, which is centrally at issue in this action, and whose background does not include any specialized knowledge concerning Housing Court proceedings,

11

data, or the procedures for obtaining such data will not be of any assistance to the trier of fact in determining the core issues in this case.  In effect, Dr. Bahchieva is acting as a biased layperson in rendering her opinions, albeit a layperson who happens to have a Ph.D.  The jury does not need such testimony as it will be fully equipped to assess the veracity and credibility of the testimony of CoreLogic witnesses on its own and reach its own conclusion on the ultimate fact at issue here – whether CoreLogic in generating its reports, maintained and used "reasonable procedures to assure maximum possible accuracy of the information concerning the individuals about whom the reports related."  *See Kumho Tire*, 526 U.S. at 152 (expert should "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"); *Zaremba*, 360 F.3d at 360; *Nora*, 164 F.3d at 746.  Dr. Bahchieva's testimony could also confuse or mislead the jury in this action.  This is an additional ground to exclude her from testifying in this action.  *See* Fed. R. Evid. 403 ("court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury . . . .").

### B.    Dr. Bahchieva's Opinions Are Not the Product of Reliable Principles and Methods or the Application of any Reliable Principles and Methods to the Facts of This Case

"[I]t is critical that an expert's analysis be reliable at every step."  *Hill v. Quigley*, 336 F. Supp. 3d 283, 299 (S.D.N.Y. 2018) (Hellerstein, J.) (quoting *Amorgianos*, 303 F.3d at 267). "Indeed, *any* step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible in its entirety."  *Id.* (internal citations omitted) (emphasis added); *see also Amorgianos*, 303 F.3d at 267 (same) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) ("The

reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*.")).

Dr. Bahchieva applies absolutely no analysis, economic or otherwise, in reaching the opinions in her report.  She opines that CoreLogic's determination that a six-month window for looking for dispositions is reasonable simply by accepting that CoreLogic made that determination based upon its experience.  Yet she performed no economic or other analysis based on actual data concerning the amount of time between case filings and their disposition nor did she seek any analysis that may have been performed by CoreLogic that supported its six-month review limitation to even determine if one existed and, if so, whether it could be verified by the application of any accepted economic principles.

Similarly, Dr. Bahchieva made utterly no effort to validate the underpinnings of her opinion that CoreLogic did all it could given limitations on public access to Housing Court data or on CoreLogic's resources, which, as shown above, were false and which could have been substantially avoided if CoreLogic utilized the court system's daily electronic data feed, of which she was ignorant.  Rather, she blindly accepted everything CoreLogic's witnesses testified to. This failure to apply any reliable principles in rendering her opinions is fatal to the admissibility of her testimony.  As this Court held in *Hill*, where "[s]everal aspects" of an expert's analysis are unreliable, improperly "limited," and much of the analysis "appears to have been reasoned backward from her conclusion, without a reliable . . . basis" for reaching her opinion, such expert evidence is not admissible under Fed. R. Civ. P. 702.  *Hill*, 336 F. Supp. 3d at 298-99.  *See also Davidov v. Louisville Ladder Grp., LLC*, 2005 U.S. Dist. LEXIS 3117, at *2 (S.D.N.Y. Mar. 1, 2005) (excluding expert testimony inconsistent with facts of case); *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc*., 2001 U.S. Dist. LEXIS 20737, at *17 (S.D.N.Y. Dec. 13, 2001) (precluding

expert report where expert relied upon unrealistic assurances instead of available records; "as an insufficient factual basis exists for the assumptions upon which [the report] rests, the Court finds [p]laintiff's report and [the expert's] testimony are unreliable and, therefore, inadmissible"); *see also, e.g., LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,* 209 F. Supp. 3d 612, 648 (S.D.N.Y. 2016) (excluding expert report and testimony as inadmissible "for at least three independent reasons: first, Coleman is not qualified to offer the proffered testimony; second, his opinions are unhelpful and unreliable because they do not 'fit' the facts of this case; and third, he did not use a reliable methodology").

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this Court exclude the expert testimony and report provided by Dr. Raisa Bahchieva.

Dated: Rye Brook, New York
       April 24, 2020

                                        Respectfully submitted,

                                        KLAFTER OLSEN & LESSER LLP


                                        _____
                                        Seth R. Lesser
                                        Jeffrey A. Klafter
                                        Alexis H. Castillo
                                        Two International Drive, Suite 350
                                        Rye Brook, New York 10573
                                        (914) 934-9200

                                        FISHMANLAW, PC
                                        James B. Fishman
                                        400 Madison Avenue, 19th Floor
                                        New York, New York 10017
                                        (212) 897-5840

                                        *Attorneys for Plaintiff*

14