UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x        Case No. 17-CV-05507 (AKH)
CLAUDINNE FELICIANO,
Individually and on behalf of all others
similarly situated,

                         Plaintiff,

             -against-

CORELOGIC SAFERENT, LLC,
a/k/a CORELOGIC RENTAL PROPERTY
SOLUTIONS, LLC,

                         Defendant.
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
THE PROPOSED CLASS ACTION SETTLEMENT, THE CLASS
NOTICE PLAN, AND APPOINTMENT OF SETTLEMENT
ADMINISTRATOR**

## TABLE OF CONTENTS

I.      BACKGROUND…………………………………………………………...……2

        A.  Plaintiff's Legal Claims and Procedural History of the Action…………………...2

II.     SETTLEMENT…………………………………………………………………...5

        A.  The Mediation…………………………………………………………………..5

        B.  The Settlement…………………………………………………………………5

III.    ARGUMENT……………………………………………………………………7

        A.  The Legal Standards for the Preliminary Approval of a Class Claim……………7

        B.  The Settlement of the Class Claims Meet the Revised Rule 23 Standards for
            Preliminary Approval…………………………………………………………...8

            1.  The Court "will likely be able to…approve the proposal under Rule
                23(e)(2)………………………………………………………………….9

                a.  Rule 23(e)(2)(A): The Class Representative and Class Counsel have
                    adequately represented the Class…………………………………………9

                b.  Rule(e)(2)(B): The proposal was negotiated at arm's length……………10

                c.  Rule 23(e)(2)(C)(i): The relief provided for the Class is adequate,
                    taking into account the costs, risks, and delay of trial and appeal………11

                d.  Rule 23(e)(2)(C)(ii): The relief provided for the Class is adequate, taking
                    into account the effectiveness of the proposed method of distributing
                    relief to the class including the method of processing class-member
                    claims if required…………………………………………………...13

                e.  Rule 23(e)(2)(C)(iii): The terms of any proposed award of attorney's
                    fees, including the timing of payment…………………………………13

                f.  Rule 23(e)(2)(C)(iv): Any agreement required to be identified under
                    Rule 23(e)(3)………………………………………………………...15

                g.  Rule 23(e)(2)(D): The Proposal treats Class members equitably relative
                    to each other………………………………………………………...15

            2.  The Court "will likely be able to certify the class" for settlement
                purposes……………………………………………………………...15

i

3.   The Proposed Notice Plan Satisfies Fed.R.Civ.P.23(c)(2)(B)…..…………...16

IV.     CONCLUSION……………………………………………………………………18

## Table of Authorities

**Cases**                                                                                                                          **Pages**

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
   2016 U.S. Dist. LEXIS 124202 (E.D. Pa. Sept. 12, 2016) .................................. 11

*Brooks v. Am. Export Indus., Inc.*,
   1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .................................... 12

*Carter v. Shalhoub Mgmt. Co., Inc.,* No. EDCV-15-01531-MWF-
   2017 U.S. Dist. LEXIS 221011 (C.D. Cal. Mar. 15, 2017)................................... 7

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................ 8, 12

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ................................................................................ 11

*Flores v. Express Services, Inc.*, No. 14-3298,
   2017 U.S. Dist. LEXIS 47451 (E.D. Pa. Mar. 30, 2017)...................................... 7

*Fullwood v. Wolfgang's Steakhouse, Inc.,* No. 13-cv-7174,
   2015 U.S. Dist. LEXIS 96903 (S.D.N.Y. July 23, 2015) .................................. 12

*Hall v. Accolade, Inc.*,
   2019 U.S. Dist. LEXIS 143542 (E.D. Pa. Aug. 22, 2019) .................................. 8

*Hicks v. Morgan Stanley & Co.,* No. 01-cv-10071,
   2005 U.S. Dist. LEXIS 24890 (Oct. 24, 2005) ................................................. 13

*Goldberger v. Integrated Res. Inc.,*
   209 F.3d 43 (2d Cir. 2000) .............................................................................. 14

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 10

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) .................................. 11

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y.) ............................................................................... 11

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
   2019 U.S. Dist. LEXIS 13481 (E.D.N.Y. Jan. 28, 2019) ................................... 8

*Marin v. Dave & Busters, Inc.,* 15 Civ. 3608
   2019 U.S. Dist. LEXIS 232134 (S.D.N.Y. July 19, 2019) ................................ 14

*Patel v. Trans Union, LLC,* No. 14-cv-00522-LB,
  2018 U.S. Dist. LEXIS 40282 (N.D. Cal. Mar. 11, 2018) ...................................................... 7

*Safeco Insurance Co. of America v. Burr,*
  551 U.S. 47 (2007) .................................................................................................. 12

*Sapp v. Experian Information Solutions, Inc.,* No. 10-cv-4312,
  2013 U.S. Dist. LEXIS 71279 (E.D. Pa. May 15, 2013) ...................................................... 12

*Strougo v. Bassini,*
  258 F. Supp. 2d 254 (S.D.N.Y. Apr. 7, 2003) ....................................................... 13

*Wright v. Linkus Enters., Inc.,* No. 2:07-cv-01347-MCE-CMK,
  2009 U.S. Dist. LEXIS 70499 (E.D. Cal. July 29, 2009) ...................................................... 17

**Rules, Statutes and Other Regulations**

15 U.S.C. 1681……………………………………………………………….…….2, 6

Fed.R.Civ.P.23………………………………………………………………...….*passim*

Fed.R.Civ.P.26………………………………………………………………….…..3

N.Y. Gen. Bus. Law 380-j…………………………………………………………...6

Plaintiff Claudinne Feliciano ("Plaintiff") on her own behalf and on behalf of the members of the class (the "Class") certified by this Court in its order dated July 29, 2019 ("Class Order," ECF No. 89) submits this memorandum in support of her Motion for Preliminary Approval of the Proposed Class Action Settlement, the Class Notice Plan, and Appointment of Settlement Administrator (the "Motion") with regard to the proposed settlement of this action (the "Settlement"). This Settlement was reached with Defendant CoreLogic Rental Property Solutions, LLC ("Defendant" or "RPS") with the assistance of, and after a full day of mediation before, the Hon. Diane M. Welsh, a former federal Magistrate Judge in the Eastern District of Pennsylvania, who is now with JAMS and has a nationwide reputation for her settlement mediation abilities.

The Settlement is memorialized in the Settlement Agreement ("Settlement Agreement") attached as Exhibit A to the accompanying Declaration of Seth R. Lesser ("Lesser Dec."). The Settlement provides for a direct payment (meaning that no claim form will be required) in the amount of $450 to each of the 1,921 members of the Class. Plaintiff believes this amount, which is 45% of the $1,000 per claim maximum statutory award that could have been obtained in this case, constitutes an excellent result for a FCRA landlord tenant credit reporting case. *See* page 9 n.1, below. This amount, moreover, is the actual recovery each Class member will receive because, under the Hon. Diane M. Welsh's guidance and direction, the notice and administration and the attorney fees and costs and an incentive award were separately negotiated and will be paid directly by the RPS, such that they will not diminish the Class's direct recovery.

For the reasons set forth below, Plaintiff submits that this Court should preliminarily approve the Settlement and direct notice to be provided to the Class because the Court "will

likely be able to" grant final approval of the Settlement under the criteria set forth in Federal Rule of Civil Procedure 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii).

## I.    BACKGROUND

RPS is a company that provides various services to housing providers, including, as here relevant, tenant screening reports about applicants for leases, which Plaintiff contends made RPS a "credit reporting agency" ("CRA") within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA"), as well as the New York Fair Credit Reporting Act,, General Business Law ("GBL"), Art. 25, § 380, *et seq*. ("NYFCRA").

Upon a request for a report – and the submission of personal identifying information about the applicant to RPS by the leasing agent –RPS prepares and sells tenant screening reports to prospective landlords, which can reference prior New York City housing court proceedings, if any, involving the applicant and information about the status/dispositions of such proceedings.

### A.    Plaintiff's Legal Claims and Procedural History of the Action

Plaintiff Feliciano commenced filed her Complaint on July 19, 2017, alleging, on behalf of herself and others similarly situated in New York, that RPS failed to use and maintain reasonable procedures and processes to ensure "maximum possible accuracy" of the tenant screening reports it prepared and provided to third parties, thereby allegedly violating the FCRA and the NYFCRA.  (*See* ECF No. 1.)  Specifically, Plaintiff alleged that she, and others, had been the subject of tenant screening reports prepared by RPS that described the disposition of cases brought against them in housing court as "Case Filed" (i.e., "pending"), when, as of the date of the report, the case had previously been disposed as dismissed, discontinued, or withdrawn.  *Id.*  The Complaint asserted a willful violation of these statutes and sought statutory

damages.  *Id.*  On August 9, 2017, prior to the appearance of RPS, Plaintiff filed an Amended

Complaint (ECF No. 10), which has remained the operative complaint in the case.

      After an initial pretrial case management conference held on December 1, 2017 (*see* ECF

No. 23), the parties exchanged Rule 26 statements, and non-expert class and merits discovery

commenced in 2018 and continued through January 2019.  Lesser Dec. ¶ 5.  During that time, the

Parties exchanged many hundreds of pages of documents relating not only to the named

Plaintiff's claims but also RPS's history and policies and procedures relating to landlord tenant

records in New York Housing Court, and also RPS's production of a spreadsheet listing potential

class members which Plaintiff's counsel then undertook to have reviewed by two researchers

against New York City Housing Court records to ascertain the putative class members.  *Id.*   In

addition to depositions of the parties in the case, Plaintiff also took the deposition of LexisNexis,

a vendor providing housing court record information that RPS used during a portion of the

identified class period.  In total, Plaintiff's counsel took, or defended, a total of seven

depositions, which took place in New York, Orlando, Dallas, Dayton, and Washington, DC.

Lesser Dec. ¶ 6.

      On January 18, 2019, Plaintiff filed her motion for class certification, based upon the

discovery, including her counsel's review of the New York City Housing Court files.  Lesser

Dec. ¶ 7; *see* ECF No. 35.  Following a hearing before the Court on July 18, 2019, as well as a

post-hearing motion by RPS to supplement the record, on July 29, 2019, the Court issued the

order certifying the Class, which is now the Class subject to the Settlement Agreement.  *Id.*;

ECF No. 89 ("Class Certification Order").  The Class Certification Order appointed the named

Plaintiff, Claudinne Feliciano, as class representative and the undersigned law firms as class

counsel ("Class Counsel").  *Id.*

After the Court denied RPS's motion for reconsideration of the Class Certification Order (ECF No. 96), and the Second Circuit denied RPS's request for interlocutory review pursuant to Fed. R. Civ. P. 23(f), the class notice, as approved by the Court (*see* ECF Nos. 110, 115), was ordered by the Court at a status conference on March 6, 2020, to be sent to 1,926 members of the Class.  Lesser Dec. ¶ 8; ECF No.  115.  After the mailing of notice by the claim administration firm American Legal Claim Services LLC, five individuals opted out of the case.  *Id.*   That left 1,921 individuals – who constitute the members of the Settlement Class.  *Id.*

Following the certification of the Class, the parties also engaged in expert discovery, first of Plaintiff's expert addressing the reasonableness of RPS's procedures and processes, and then of Defendant's opposing expert.  Lesser Dec. ¶ 9.  Plaintiff thereupon filed a *Daubert* motion, which RPS opposed and which the Court denied.  Lesser Dec. ¶ 10; ECF Nos. 116, 117, 120, 123, 124.  In turn, on June 9, 2020, RPS filed a motion for summary judgment, seeking dismissal of the case.  *Id.* ; ECF No. 125.  That motion was held in abeyance by the defendant while the parties engaged in settlement discussions and ultimately withdrawn without prejudice when a settlement in principle was reached.

## II.   SETTLEMENT

### A.   The Mediation

After the notice was issued to the Class, and the Court set the case down for a trial beginning

on September 14, 2020 (ECF Doc. No. 115), the parties agreed to discuss potential resolution of

the case.  Lesser Dec. ¶ 11.  They agreed to retain the Hon. Diane M. Welsh, formerly a Magistrate

Judge in the Eastern District of Pennsylvania, and now with JAMS, to serve as a mediator. *Id.*  The

Hon. Diane M. Welsh is considered a preeminent mediator and has helped resolve numerous class

settlements, including other FCRA cases.  *Id.*

In advance of the mediation, as a result of (1) the completed class and merits discovery;

(2) the expert reports and expert discovery; (3) their own research and experience in this case and

knowledge regarding New York City housing court practices and procedures and the FCRA; (4)

the comprehensive briefing on the motions throughout the course of the case, Class Counsel

believe it fair to say that they were thoroughly versed in the strengths and weaknesses of the

claims asserted this case.  Lesser Dec. ¶ 12.

The mediation lasted an entire day on June 26, 2020.  Lesser Dec. ¶ 13.  Late in the

afternoon of that day, after extensive efforts by the mediator, the parties reached an agreement in

principle to settle the case.  The parties then negotiated the full Settlement Agreement now

presented to the Court as Exhibit A to the accompanying Declaration of Seth R. Lesser.  *Id.*

### B.   The Settlement.

Assuming approval by the Court, and without Defendant admitting any liability (and

instead expressly denying all such liability), the Settlement's primary terms provide that:

> 1.   Without having to submit a claim form, each of 1,921 Settlement Class
>      members who do not opt out of the Settlement will directly receive a check of
>      $450 from a $864,450 fund that Defendant will pay and which will be
>      administered by the Settlement Administrator.  Settlement Agreement ¶¶

4.2.1, 4.3.1, 5.1.

2. Defendant will separately pay the costs of Class notice, Class Action Fairness Act ("CAFA") notice, and Settlement administration, so that those costs will not diminish the Class's $450 minimum payment amount. However, in the event that if there are any uncashed checks from the initial distribution, such administration and notice fees shall be reimbursed to Defendant.  As to any remaining funds thereafter, if a second distribution in the amount of at least $10 per Class member who cashed their check can be made, there will be a second distribution.  If the to-be-distributed amount does not exceed $10 per Class member, the Parties will seek the Court's approval to use the remaining amount to be paid to the National Consumer Law Center and the National Association of Consumer Advocates as a *cy pres* award (provided that those organizations stipulate that the award amount will not be used in furtherance of litigation and be used for tax-exempt 501(c)(3) purposes).  Settlement Agreement ¶¶ 4.2.5, 5.3.2.

3. Defendant will separately pay attorneys' fees and costs in the amount of $655,000 ($95,000 in costs and expenses and $560,000 in fees) and a service award to the named Plaintiff in the amount of $20,000, all subject to the Court's approval.  Settlement Agreement ¶¶ 5.3, 5.3.1.

4. In return for the consideration provided under the Settlement, Plaintiff and all Class members who do not opt out shall be conclusively deemed to have fully, finally, and forever settled, released, and discharged all claims asserted in the Litigation under 15 U.S.C. 1681e(b) and N.Y. Gen. Bus. Law § 380-j(e) or that could have been asserted in the Litigation, including claims under or any state law equivalents of those statutes, and all damages available with respect to such claims, whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which the Plaintiff and Class Members who have not properly excluded themselves ever had or now have against the Defendant and/or any of its parents, subsidiaries, corporate affiliates, representatives,  employees, agents, officers, directors, insurers, or affiliates.  Settlement Agreement ¶ 4.4.

5. Class members will be afforded the opportunity to opt out or object (if they do not opt-out) to the settlement.  Settlement Agreement ¶ 4.4.5.

The complete settlement terms are set forth in the Settlement Agreement. (Lesser Dec. at Exhibit A).

## III.   ARGUMENT

This Settlement would, if approved by the Court, resolve the FCRA, NYFCRA, and analogous state law claims of the Class.

Plaintiff believes that the recovery here is not merely adequate—it is an excellent result. Lesser Dec. ¶ 15.  The actual recovery to each Class Member will be at least $450, directly paid, without the need for a claim form.  Inasmuch as the FCRA's range for recovery of statutory damages for a willful violation of the Statute is from $100 to $1,000, $450 as a settlement amount is, even on its face, a reasonable amount.  And, although every case is different, in other credit reporting cases, settlement amounts received by class members have been approximately the same or often less than the amount here.[1]  The $450 recovery number here, to be paid directly to the Class without the need for a claim form, is undoubtedly a fair, reasonable, and adequate result.  *Id.*

### A.   The Legal Standards for Preliminary Approval of a Class Claim

The preliminary approval of the settlement of a class claim is governed by Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 was amended recently effective December 1,

---

[1] *See, e.g., Leo v. Appfolio, Inc.*, No. 3:17-cv-05771-RJB (W.D. Wash.) at Dkt. No. 66 (final approval granted July 18, 2019 in tenant screening class action; payment of $425 to class members);  *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282, at *2-3 (N.D. Cal. Mar. 11, 2018) (payment of $400.00 to each class member); *Flores v. Express Services, Inc.*, No. 14-3298, 2017 U.S. Dist. LEXIS 47451, at *1 (E.D. Pa. Mar. 30, 2017) (approval of FCRA settlement with $50 automatic payment to 32,000 member class, with option to seek additional payment from damages fund); *Carter v. Shalhoub Mgmt. Co., Inc.*, No. EDCA-15-01531-MWF-(JCx), 2017 U.S. Dist. LEXIS 221011 (C.D. Cal. Mar. 15, 2017) (automatic payment of $276 to each class member); *King v. Gen'l Info. Serv's, Inc.*, C.A. No. 10-6850 (ECF 125) (E.D. Pa. Nov. 14, 2014) (challenging practice of reporting outdated adverse non-conviction records; class members paid $49.68 each); *Robinson v. Gen'l Info. Serv's, Inc.*, C.A. No. 11-7782 (ECF 55) (E.D. Pa. Nov. 4, 2014) (challenging practice of failing to notify consumers that consumer reporting agency was reporting to prospective employers; class members paid $49 each); *Marcum v. Dolgencorp, Inc.*, No. 12-cv-108 (ECF 78) (E.D. Va. Oct. 16, 2014) (approving settlement that pays inadequate disclosure class members $53 each).

2018.  Under a new heading reading "Grounds for Decision to Give Notice," the Rule now

specifically addresses the standard for *preliminary* review of class action settlements:

> (e)   Settlement, Voluntary Dismissal, or Compromise.  The claims, issues, or defenses of a certified class – or a class proposed to be certified for purposes of settlement – may be settled, voluntarily dismissed, or compromised only with the court's approval.  The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1)   *Notice to the Class.*
> >
> > > (A)   *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> > >
> > > (B)   *Grounds for a Decision to Give Notice.* The court must direct  notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

Fed. R. Civ. P. 23(e)(1).[2]

## B.   The Settlement of the Class Claims Meet the Revised Rule 23 Standards for Preliminary Approval

As noted above, amended Rule 23(e) establishes that, at the "preliminary approval" stage,

a district court must address two questions: (1) whether it "will likely be able to . . . approve the

---

[2] Prior to December 1, 2018, the standard for "preliminary approval" of class action settlements was not explicitly addressed in Civil Rule 23 and varied from circuit to circuit.  *See, e.g., City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (seminal case establishing Second Circuit standard).  Amended Rule 23, however, "alter[s] the standards that guide a court's preliminary approval analysis," *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 2019 U.S. Dist. LEXIS 13481, at *118 (E.D.N.Y. Jan. 28, 2019), and now "explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements," *Hall v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 143542, at *5-6 n.1 (E.D. Pa. Aug. 22, 2019).

proposal under Rule 23(e)(2)," and (2) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  As discussed below, both requirements are satisfied:

> **1.      The Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)"**

To determine whether the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," it must look to Rule 23(e)(2)'s newly-minted approval factors.  These factors appear under a heading reading "Approval of the Proposal":

> *(2)   Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)    the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As discussed below, Plaintiff will likely satisfy each of these factors:

> **a.      <u>Rule 23(e)(2)(A):  The Class Representative and Class Counsel have adequately represented the Class.</u>**

This factor focuses "on the actual performance of counsel acting on behalf of the class."

Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018) (hereafter "Advisory Committee

Notes"); *see also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (to support a settlement, class counsel should show that "[t]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit.).

Here, not only is there the evidence, as discussed, of the result obtained, but cases like this present, as discussed below, substantial risk and often do not lead to any recovery.

Here, however, Class Counsel moved this case, which involved a complex understanding of New York Housing Court rules and procedures and credit reporting procedures, successfully through class certification and the point of trial. Class Counsel developed a full record setting forth the merits claims in the case and would have been in a strong position to argue for Defendant's willful violation of the FCRA and NYFCRA. *See* ECF Nos. 36 at 3-16 (factual recitation of record in Plaintiff's memorandum in support of class certification); Nos. 36-2 – 36-25, 36-30 – 36-35 (exhibits in support of that motion); and No. 117-6 at 8-23 (internal pagination) (report of Plaintiff's expert, Andrew Scherer, relying upon factual record established by Class Counsel in case). Class Counsel believe that it is fair to say that they had vigorously pursued the claims of the Class and were well situated to proceed to a trial. Lesser Dec. ¶ 17. It is therefore likely that the Court will find this factor to be satisfied.

   **b.**  **Rule 23(e)(2)(B):  The proposal was negotiated at arm's length.**

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." Advisory Committee Notes. Here, this factor is likely to be satisfied because the settlement was achieved through arm's-length negotiations between the parties with the assistance of an experienced neutral third-party mediator, a former federal magistrate judge. Lesser Dec.  ¶ 16.  "[T]he participation of an independent mediator in

settlement negotiations virtually ensures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 U.S. Dist. LEXIS 124202, at *15 (E.D. Pa. Sept. 12, 2016) (quotation omitted); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (court may find the negotiating process fair where, as here, "the settlement resulted from arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.") (citation omitted); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007) (if settlement achieved through arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

      **c.**    **Rule 23(e)(2)(C)(i):  The relief provided for the Class is adequate, taking into account the costs, risks, and delay of trial and appeal.**

This factor recognizes that while the "relief that the settlement is expected to provide to class members is a central concern," such relief must be viewed in relation to "the cost and risk involved in pursuing a litigated outcome."  Advisory Committee Notes.  This analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure."  *Id.*

Here, this factor is also likely to be satisfied. As discussed above, the recovery to each Class member will be $450, directly paid, which is not only on its own an excellent result (45%

of the maximum statutory damage) but on a comparative basis considering other FCRA settlements. *See* page 9 n.1, above; *compare, e.g.*, *Grinnell*, 495 F.2d at 455 n.2 ("There is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Brooks v. Am. Export Indus., Inc.*, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

And this result has to be measured against risks and costs.  Absent settlement, and even assuming that Plaintiff defeated Defendant's motion for summary judgment, trial would have ensued with risks.  To recover on the claim for statutory damages, Plaintiff would have to prove a willful violation of the FCRA at trial, a high hurdle to clear, and one that Defendant had shown it was willing to vigorously challenge.  *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007) (willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."); *see also Fullwood v. Wolfgang's Steakhouse, Inc.,* No. 13-cv-7174, 2015 U.S. Dist. LEXIS 96903, a *3 (S.D.N.Y July 23, 2015); *Sapp v. Experian Information Solutions, Inc.*, No. 10-cv-4312, 2013 U.S. Dist LEXIS 71279, at *2 (E.D. Pa. May 15, 2013) (noting potential of successful willfulness defense).

And even had Plaintiff prevailed, it would be unrealistic not to expect an appeal. Both at trial and on any appeal, of course, there would have been yet additional costs and time incurred – expert costs, trial preparation and pre-trial motion practice costs and trial costs – and at least some risk of loss.  While Plaintiff may have been able to obtain a larger amount at trial, the "proposed settlement provides for relief now, not some wholly speculative payment of a

hypothetically larger amount years down the road." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 260 (S.D.N.Y. Apr. 7, 2003).  Avoidance of this risk, expenditure of time, and resources clearly benefits all parties and the interests of justice more broadly.  *Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071, 2005 U.S. Dist. LEXIS 143542, at \*6 (Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

        d.        **Rule 23(e)(2)(C)(ii):  The relief provided for the Class is adequate, taking into account the effectiveness of the proposed method of distributing relief to the class including the method of processing class-member claims if required.**

Under this factor, the court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding."  Advisory Committee Notes.  This factor is likely to be satisfied, first, because this is a case in which the settlement Class is a defined group of specific individuals who have been identified from Defendant's records and a careful review of Housing Court records by Class Counsel, and, further, because Class Members do not have to file a claim form to receive their payment.  Far from being 'unduly demanding," there is no claims process at all; if the Settlement is approved, all Class Members will be directly paid.  This factor is likely to be met.

        e.        **Rule 23(e)(2)(C)(iii):  The terms of any proposed award of attorney's fees, including the timing of payment.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement."  Rule 23 Advisory Committee Notes.  Here, the attorney-fee provisions were reached as a matter of a negotiation overseen by an exceedingly experienced former federal Magistrate Judge as a matter separate and apart from the recovery for the Class.  Lesser Dec. ¶ 19.  At the final approval stage, Plaintiff will fully brief the

fairness and reasonableness of the requested attorneys' fees and expenses under the factors articulated by the Second Circuit in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000). In the meantime, it is likely that the amount and timing of the proposed attorneys' fees and expenses will support final approval because (1) Class Counsel will not, like the Class itself, get paid until after final approval; (2) the expenses Class Counsel incurred and spent in this litigation were all necessarily incurred and demonstrable through Class Counsel's records, including such items as deposition transcripts, court costs, expert costs, and notice of pendency following class certification; (3) the fee award is justified in light of the extensive litigation that was undertaken to obtain both the class certification and the creation of a factual record appropriate for taking the case to trial, including as will be set forth in great detail at the time of final approval, the devotion of in excess of 1,250 hours to the case; (4) the fee award will be further justified because it will, in fact, represent a negative lodestar against the time put in by Class Counsel; (5) the fee award was the product of negotiation with, as noted, an experienced mediator; and (6) the fee award will not diminish the Class's recovery. Plaintiff believes this factor is likely to be satisfied.[3]

---

[3] In addition, although not specifically addressed in Rule 23(e)(2), the proposed service award of $20,000 to Ms. Feliciano is within the range of what is appropriate for a named plaintiff to receive for having been willing to put their name on a federal class action lawsuit and for having, as did Ms. Feliciano, taken the time to aid counsel in successfully prosecuting the case, including responding to discovery requests and sitting for deposition. *See, e.g.*, *Marin v. Dave & Busters, Inc.*, 15 Civ. 3608 (AKH), 2019 U.S. Dist. LEXIS 232134, at *8 (S.D.N.Y. July 19, 2019) ($35,000 incentive award); *Leo v. Appfolio, Inc.*, No. 3:17-cv-05771-RJB (W.D. Wash.) at Dkt. No. 66 (final approval granted July 18, 2019 in tenant screening class action; incentive award of $30,000); *Rodriguez v. Calvin Klein Inc, et al.*, No. 1:15-cv-2590-JSR (S.D.N.Y. Mar. 21, 2016) at Dkt. No. 33 (final approval order awarding $15,000 in class representative in recognition of settlement in FCRA section 1681b(b)(3) case).

**f.**      **<u>Rule 23(e)(2)(C)(iv):  Any agreement required to be identified under Rule 23(e)(3).</u>**

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal."  Here, besides the Term Sheet negotiated by the parties immediately after the mediation, which is superseded by the Settlement Agreement, there are no "side agreements" concerning this settlement.  Thus, this factor is likely to be satisfied.

**g.**      **<u>Rule 23(e)(2)(D):  The proposal treats Class Members equitably relative to each other.</u>**

This factor seeks to prevent the "inequitable treatment of some class members *vis-a-vis* others."  Advisory Committee Notes.  This factor is likely to be satisfied.  Each Class Member will receive the same recovery for the claims in this case regardless of the individual circumstances of any individual member of the Class which is consistent with this action's only seeking only statutory damages.

**2.      The Court "will likely be able to certify the class" for settlement purposes**

Having determined that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," the other half of the preliminary approval inquiry is whether the Court "will likely be able to . . . certify the class" for settlement purposes.    Fed. R. Civ. P. 23(e)(1)(B)(ii).  Plaintiff submits that this factor is either irrelevant or met *a fortiori*, inasmuch as the parties do not seek certification of a settlement class.  Rather the Class here is the same class that the Court certified for litigation purposes, which certification the Court upheld against Defendant's motion for reconsideration and as to which the Second Circuit did not grant Rule 23(f) interlocutory review.  Accordingly, for the reasons set forth in the Court's Class Certification Order, which do

not need repetition here, this factor has already been determined by the Court to have been met, as has been, relatedly, the adequacy of the Class Representative and Class Counsel.

### 3.     The Proposed Notice Plan Satisfies Fed. R. Civ. P. 23(c)(2)(B)

When a class action lawsuit is settled, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal," which means "the best notice that is practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort." Fed. R. Civ. P. 23(e)(1)(B), 23(c)(2)(B). Also, any notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, all of the above requirements are satisfied. Here, notice will be sent by a third-party administrator, American Legal Claim Services LLC (the "Settlement Administrator") by direct mail to every member of the Class. American Legal Claim Services LLC, is an experienced and able claims administrator with whom counsel has worked before, and from whom the Parties obtained a capped bid to handle the settlement administration of this case, which the Parties' counsel agree is a reasonable amount to administer this case. *See* Lesser Dec. ¶ 21.

The distribution of the Mail Notice will be to the Class list that was used for sending the notice of pendency this spring (Lesser Dec. ¶ 8), but it will include updates received by Class Counsel since then and will, itself, then be run through United States Postal Service's National Change of Address database. Settlement Agreement at ¶ 4.2.3. The Mail Notice will be sent via

16

first class United States mail, postage prepaid requesting either forwarding service or change service.  For up to forty-five days following the mailing of the Mail Notice, the Settlement Administrator will re-mail the Mail Notice via standard U.S. Mail, postage prepaid, to updated addresses of the Class Members to the extent that it receives any address change notifications from the U.S. Postal Service.  *Id.*  Thus, accepted and best practicable notice will be provided.  In addition, the Settlement Administrator also will maintain the Class website previously established at the time of the mailing of the notice of pendency, http://www.newyorkhousingcourtclassaction.com. The Class Website will post important settlement documents, such as the Settlement Agreement, the Mail Notice, and the Preliminary Approval Order.  In addition, the Class Website will include a section for frequently-asked questions, and procedural information regarding the status of the Court-approval process, such as an announcement when the Final Approval Hearing is scheduled, when the Final Order and Judgment has been entered, when the Effective Date is expected or has been reached, and when payment will likely be mailed. Settlement Agreement ¶ 4.2.3.

Thus, the requirements of Fed. R. Civ. P. 23(e)(1)(B), 23(c)(2)(B) are met.  *See, e.g.*, *Wright v. Linkus Enters., Inc.*, No. 2:07-cv-01347-MCE-CMK, 2009 U.S. Dist. LEXIS 70499, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting Fed. R.  Civ. P. 23(c)(2)(B), (e)).

The Mail Notice itself is written in clear language and accurately describes the nature of the lawsuit, the Settlement, and the process Class Members must follow to exclude themselves from the Settlement and the process Class Members who do not opt-out must follow to object to the Settlement.  *Id.* at ¶¶ 4.2.3, 4.4.5 and Exhibit 2 thereto.  All of the identified elements

17

required by Fed. R. Civ. P. 23(c)(2)(B) are provided within the Notice and that Rule's

requirements are thus met.

## IV.    CONCLUSION

For the above reasons, the Court should grant Plaintiff's Motion and enter the attached

Order Preliminarily Approving Settlement and Directing Notice to Class.

Dated:  August 28, 2020                                     Respectfully submitted,
Rye Brook, New York

By: */s/ Seth R. Lesser*
 Seth R. Lesser
Jeffrey A. Klafter
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
www.klafterolsen.com

James B. Fishman
FishmanLaw, PLLC
400 Madison Avenue, 19th Floor
New York, New York 10017
Telephone:  (212) 897-5840
www.fishmanlawnyc.com

*Attorneys for Plaintiff and the Class*

18